CAROL A. SOBEL SBN 84483
MONIQUE A. ALARCON SBN 311650
AVNEET S. CHATTHA SBN 316545
725 Arizona Avenue, Suite 300
Santa Monica, CA 9040
t. 310.393.3055
e. carolsobel@aol.com
e. monique.alarcon8@gmail.com
e. avneet.chattha7@gmail.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA COOLEY, BENJAMIN HUBERT AND CASIMIR ZARODA, individually and on behalf of a class of similarly situated persons,<br><br>Plaintiffs,<br>v.<br>The CITY OF LOS ANGELES, a municipal entity; DOES 1-10,<br><br>Defendants. | Case No.:<br><br>Civil Rights Complaint<br>Class Action: FRCP 23(b)(3)<br><br>42 U.S.C. § 1983: Fourth, Fifth, and Fourteenth Amendments;<br>Title II – ADA<br>Cal. Const. Article 1, §§ 7, 13, 19<br>Cal. Civ. Code § 51<br>Cal. Civ. Code § 52.1<br>Cal. Civ. Code § 2080 et seq.<br><br>**DEMAND FOR JURY TRIAL** |

## JURISDICTION AND VENUE

1. This is an action for declaratory relief and damages pursuant to 42 U.S.C. § 1983 based upon the violations of Plaintiffs' rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and analogous California constitutional and statutory law. Jurisdiction exists pursuant to 28 U.S.C. § 1331 and 1343 based on questions of federal constitutional law and 42 U.S.C. § 1983. Jurisdiction also exists under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, as it arises from the same case or controversy as Plaintiffs' federal claims.

2. Venue is proper in the Central District of California pursuant to 28 U.S.C. §1391(b) as all parties reside in the Central District and the events and conduct complained of herein all occurred in the Central District.

## PRELIMINARY STATEMENT

3. In 2012, the Ninth Circuit upheld a preliminary injunction in *Lavan v. City of Los Angeles*, 693 F.3d 1022 (9th Cir. 2012), 133 S. Ct. 2855 (2013) cert denied. *Lavan* challenged the enforcement of LAMC § 56.11, proscribing the placement of any personal property on public property. *Lavan v. City of Los Angeles*, 797 F. Supp. 2d 1005 (C.D. Cal. 2011). In *Lavan*, the district court enjoined the City from seizing property of unhoused individuals when the property is momentarily unattended but not reasonably believed to be abandoned, while permitting seizure when the property is evidence of a crime, or creates an immediate public hazard without complying with due process notice requirements. The injunction also barred the City from summarily destroying seized property and ordered the City to store the property for 90 days, consistent with state law, underscoring the need for procedural due process both before and after the seizure. In affirming the rights of the plaintiffs in *Lavan*, the Ninth Circuit underscored that the "simple rule [i.e. notice and an opportunity to be heard by an impartial tribunal]

holds whether the property in question is an Escalade or a [tent], a Cadillac or a cart." 693 F. 3d at 1032 (emphasis in origina).

4. Again in 2016, the City of Los Angeles was enjoined by another District Court for engaging in similar conduct, seizing the property of homeless individuals. See *Mitchell v. City of Los Angeles*, No. 16-cv-01750 SJO (GJSx) (C.D. Cal. 2016) [Dkt. 51 (Apr. 13, 2016)].

5. Despite these directives from the federal courts protecting the property of unhoused individuals forced to live on city streets because of the lack of alternative shelter, the City, once again, seized personal property and destroyed it without an opportunity for the rightful owners to reclaim it.

## PARTIES

**PLAINTIFFS:**

**Rebecca Cooley**

6. Plaintiff **REBECCA COOLEY** is a disabled individual who, at the time of these events, was residing on the streets of the City of Los Angeles. She suffers from Crohn's disease and has various medical conditions that limit her ability to perform some essential daily living activities. Ms. Cooley became homeless after undergoing three surgeries to treat complications with her Crohn's disease. Prior to this, she was employed. With the manifestation of Crohn's disease and the surgeries, her health was not well enough to maintain her position as a manager at Nordstrom. She became homeless when she and related medical expenses left her unable to afford rent.

7. Ms. Cooley is married to Plaintiff **BENJAMIN HUBERT** and she relies heavily on her husband for care. Her sole source of income is government aid in the form of $221 in General Relief monthly. She cannot afford housing in the City. At the time of the incident giving rise to this Action, she could not locate an available shelter placement that would accommodate a couple. As a result, and

because she relies on her husband for physical assistance with daily activities, Plaintiffs Cooley and Hubert had no alternative but to stay on the streets.

8. After some time of receiving services through St. Joseph Center and C3 (County-City-Community Partnership), she was connected with an Adult Residential Facility, where she is currently staying with her husband. There, Ms. Cooley receives temporary housing and assistance with obtaining medical services and mental health care. Ms. Cooley has applied for and is hopeful that she and her husband will soon secure permanent supportive housing.

9. In September 2017, Ms. Cooley was living on the sidewalk at 3rd and Rose in the Venice neighborhood in the City of Los Angeles. On or about September 15, 2017, most of Ms. Cooley's belongings were confiscated and summarily destroyed by the Defendant City's agents and employees in an unannounced sweep of the block where she stayed. Ms. Cooley sues on behalf of herself and other similarly situated individuals.

**Benjamin Hubert**

10. Plaintiff **BENJAMIN HUBERT** is an individual who, at the time of these events, was residing on the streets of the City of Los Angeles. After his wife, Plaintiff **REBECCA COOLEY**, could no longer work because of her disabilities, he became the sole wage earner. Soon after, he lost his job after missing work to attend to Ms. Cooley's medical emergencies. The two had no alternative but to live on the streets. His sole source of income is $221 a month government aid in the form of General Relief. Even combined with the $221 a month his wife receives, he could not afford housing in the City.

11. In September 2017, Mr. Hubert was living on the sidewalk at 3rd & Rose in the Venice neighborhood in the City of Los Angeles. On or about September 15, 2017, most of Mr. Hubert's belongings were confiscated and summarily destroyed by the Defendant City's agents and employees. Mr. Hubert sues on behalf of himself and other similarly situated individuals.

**Casimir Zaroda**

12. Plaintiff **CASIMIR ZARODA** is an unsheltered individual who resides on the streets of the City of Los Angeles in the Venice neighborhood. He became homeless during the 2008 economic downturn when he was unable to make a living wage, despite being employed. After Mr. Zaroda was evicted from his apartment in Sonoma County, he began living at a shelter while still working and taking on a second job in petition canvassing to make extra income. While living at the shelter, Mr. Zaroda set aside 80% of his income to try to save enough money to secure permanent housing again. He stayed at the shelter for six months, but it quickly became difficult to maintain employment while living there. Mr. Zaroda relied on public transportation to get to work, but if he missed the bus or it was late, he could not get to work on time. He suffered sleep deprivation because of the environment at the shelter. Ultimately, the lack of sleep interfered with his job performance and, together with the economic recession impact, he was laid off.

13. After losing his job, Mr. Zaroda searched for similar employment opportunities and found opportunities in Los Angeles. With the money he saved up while living at the shelter, he moved to Los Angeles. He got jobs, lived in motels, but could not make a living wage to afford a place to live.

14. Currently, Mr. Zaroda's sole source of income is government aid in the form of General Relief (GR). With only $221 per month, he does not have enough money to provide for his basic living necessities, much less pay rent in the City of Los Angeles. In the past, he participated in the General Relief Opportunities for Work (GROW) program and tried to secure employment again but being unsheltered presented impediments. As a consequence of living on the streets for several year Mr. Zaroda now suffers from psychological disabilities. He is currently on the Section 8 housing waitlist.

15. In September 2017, Mr. Zaroda was living on the sidewalk at 3rd & Rose in the City of Los Angeles. On or about September 15, 2017, most of Mr.

1. Zaroda's belongings were confiscated and summarily destroyed by the Defendant City's agents and employees. Mr. Zaroda sues on behalf of himself and other similarly situated individuals.

**DEFENDANTS:**

16. Defendant **CITY OF LOS ANGELES** ("**CITY**") is a municipal entity organized under the laws of the State of California with the capacity to sue and be sued. The **CITY**'s liability is based in whole or in part upon California Government Code §§ 815.2 and § 920, and/or Civil Code §§ 43, 51, 51.7, and/ or 52.1. Liability under federal law for all government-entity employees is based upon 42 U.S.C. § 1983 and, pursuant to California law, respondeat superior. The departments of the City of Los Angeles include, among others, the Los Angeles Police Department (LAPD), the Department of Public Works, and the Bureau of Sanitation, employees of which committed the acts complained of herein.

17. The Defendant **CITY**, its employees and agents, participated personally in the unlawful conduct challenged herein and, to the extent that they did not personally participate, authorized, acquiesced, set in motion, or otherwise failed to take necessary steps to prevent the acts that resulted in the unlawful conduct and the harm suffered by Plaintiffs. Each acted in concert with each other. The challenged acts caused the violation of Plaintiffs' rights.

18. The identities and capacities of Defendants **DOES 1 through 10** are presently unknown to Plaintiffs, and on this basis, Plaintiffs sue these Defendants by fictitious names. Plaintiffs will amend the Complaint to substitute the true names and capacities of the DOE Defendants when ascertained. Plaintiffs are informed, believe, and thereon alleges that DOES 1 through 10 are, and were at all times relevant to this complaint, employees and/or agents of the Defendant **CITY OF LOS ANGELES** and are responsible for the acts and omissions complained of herein. Defendants DOES 1 through 10 are sued in both their official and individual capacities.

## FACTS

19. On the morning of September 15, 2017, employees of the **CITY OF LOS ANGELES** arrived at the area of 3rd Avenue and Rose Avenue in the Venice neighborhood of Los Angeles. City employees began an "area cleaning" of the sidewalks where unhoused individuals usually reside.

20. Consistently, for over two years, the Defendant **CITY** would post signs that provide three-days' notice of the area cleanings. The signs, however, do not indicate the specific streets that will be closed off and cleaned. Previously, **CITY** employees had only targeted 3rd Avenue. With prior notice of the sidewalk cleaning, throughout this time period and, under the direction and control of LAPD officers, Plaintiffs were always allowed to pack up their belongings and move them temporarily to Rose Avenue while the cleaning on 3rd Avenue took place.

21. The sweep on September 15, 2017 was not noticed. On information and belief, it had been several weeks since the City last conducted an "area cleaning" in the location of 3rd Avenue and Rose Avenue. Plaintiffs had no reason to believe that an area cleaning would take place on Rose Avenue that morning.

22. There were approximately 60 unhoused individuals staying in the area of 3rd Avenue at the time of the September 15, 2017 incident. That morning, some individuals went to work, others went to get food, and many left for services and other appointments. Before leaving, people broke down their tents, gathered their belongings, neatly tucked them under tarps and blankets, and stored them against the wall on the sidewalk at 3rd Avenue, as they did every morning.

23. Out of an abundance of caution and habit, some individuals, like Plaintiff **ZARODA**, who were familiar with the City's property sweeps, moved their property from 3rd Avenue to Rose Avenue before leaving the area.

24. Plaintiff **CASIMIR ZARODA** moved his property to Rose Avenue at 8:00 AM. He bundled up his belongings neatly and wrapped them with a tarp and bungee cords in a way that showed it was clearly not trash nor abandoned. While

he was moving his property, Mr. **ZARODA** observed the convoy of Public Works employees and LAPD officers drive past the intersection of 3rd and Rose. When he left for breakfast, he observed the City employees parked at the intersection of Lincoln and Rose. Throughout the time, he saw them drive around 3rd Avenue various times but not park on the street. On information and belief, at approximately 11:00 AM, City employees began closing off 3rd Avenue with yellow "caution" tape. They also closed off Rose Avenue, from 3rd Avenue to Hampton Drive, which they had not usually done in the past. When Mr. **ZARODA** returned to the intersection of 3rd Avenue and Rose Avenue, residents of that area were standing behind the caution tape, prevented from entering the area, and watching as their property was summarily destroyed and thrown away.

25. On the date in question, Plaintiffs **REBECCA COOLEY** and **BENJAMIN HUBERT** left their property on 3rd Avenue while they went to breakfast at Bread and Roses Café, a nearby restaurant that caters to unhoused individuals. When they returned to 3rd Avenue, LAPD officers and Department of Public Works employees were in the process of throwing away all personal belongings that were on the sidewalk. When Ms. **COOLEY** and Mr. **HUBERT** attempted to retrieve their items, LAPD officers told them they would only be permitted to enter the taped-off area to retrieve what they could carry in one trip. Ms. **COOLEY** explained that, because of her physical limitations, she could not carry any heavy items and needed her husband to take some essential items for her, including her bike, sleeping bag, and tent. Despite advising the officers of her disability and seeking an accommodation, LAPD officers told Mr. Hubert that he could only carry what he could fit in a 60-gallon trash bag and limited them to one sleeping bag for the two of them.

26. While Ms. **COOLEY** quickly tried to select items to salvage, her husband moved their property to Rose Avenue. When be tried to move both his and Ms. Cooley's fully operable bicycles at once, he was initially stopped from

doing so by an LAPD officer. Only after pleading with a different LAPD officer was Mr. **HUBERT** was permitted to save both bikes. As instructed by the LAPD, Plaintiffs moved the little property they could salvage onto Rose Avenue then waited outside of a nearby coffee shop to observe from a distance.

27. Following the directives of the LAPD, others also removed their property from 3rd Avenue and neatly stored it on the sidewalk at Rose Avenue. After they did so, LAPD officers put up yellow "caution" tape and closed off access to Rose Avenue. When individuals who were there tried to move their property within the taped off area on Rose, they were told they would be arrested if they crossed the police tape.

28. Plaintiff **ZARODA** convinced an officer to permit him to take some of his belongings. His neatly packed property was strewn around. He was very limited in what he could recover and was blocked from taking his property even though it was readily available. He lost important items, including his transit pass.

29. Public Works employees seized the property that had been temporarily moved to Rose Avenue and immediately destroyed it by throwing it into a large trash truck with a garbage compressor. As this occurred, Plaintiffs stood nearby and watched all of their essential belongings be thrown away, despite their objections and with the City employees' knowledge that the possessions were not trash nor abandoned property.

30. Plaintiffs **COOLEY** and **HUBERT** were left with only their bicycles, the backpacks they were carrying with a few personal items, and one sleeping bag for the two of them. Among their property that was destroyed was a bike trailer used to transport their belongings during the day, two tents, sleeping bags, clothes, essential paperwork, and non-perishable food. The day prior to this incident, they purchased new sleeping bags and tents.


31. Other class members lost similar essential items, including bicycles, sleeping bags, clothing and tents, and some Plaintiffs lost equipment they used for work, such as construction tools.

32. The loss of these items created a significant hardship for Plaintiffs. They had to find donated blankets, tents and sleeping bags to protect them from the elements at night or use their meager income to replace their tents and sleeping bags. Others had to sleep on a cardboard box that night, with no protection from the elements. The money to replace the blankets, tents and sleeping bags was money that was then not available to buy food.

33. Despite the mass destruction of their property, some or all of the Plaintiffs made inquiry about recovering property and were provided an address on Towne Avenue where they could make such inquiry. The location on Towne, then the only location the **CITY** maintained for storage of the personal property of unsheltered individuals seized by Defendants during street cleanings, is more than 20 miles from the location of the seizure at 3rd and Rose. For some like Plaintiff **ZARODA**, whose transit pass was seized and destroyed, it was inaccessible. At best, the trip was one and one-half hours one way on public transportation. For medically disabled persons such at Plaintiff **COOLEY**, it was equally inaccessible.

## MONELL ALLEGATIONS

34. Based upon the principles set forth in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), the **CITY** is liable for all injuries sustained by Plaintiffs as set forth herein. The Defendant City bears liability because its policies, practices and/or customs caused Plaintiffs' injuries.

35. The City of Los Angeles and its officials have a policy, practice, or custom of conducting sweeps for the purpose of confiscating and immediately destroying the property of homeless individuals who have no place to live other than the sidewalks because of the lack of shelter in Los Angeles.

36. The City of Los Angles has failed to provide adequate training and supervision to its employees with respect to constitutional rights involving seizure of personal property and due process of law.

37. The City of Los Angeles has failed to adequately discipline or retrain officers involved in misconduct and acting with deliberate indifference during the occurrence of unlawful actions.

38. The Defendant City was on notice of the unlawfulness of their actions based on previous legal actions brought against the City for nearly identical operations in the Skid Row area, as well as two earlier lawsuits in Venice, including one in the exact same location. In fact, just one year prior to the events giving rise to this action, the Defendant City was enjoined by the District Court from engaging in the very conduct on Skid Row that is complained of herein.

## CLASS ALLEGATIONS

39. The claims set forth in this action are brought by the class representatives on their own behalf and on behalf of all of those similarly situated pursuant to Fed. R. Civ. P. 23(b)(3) for declaratory relief and damages.

40. The putative class includes approximately 60 individuals who resided in the area of 3rd Avenue and Rose Avenue, in the Venice neighborhood at the time that this incident occurred. Each member of the class had most or all of his or her personal property taken and destroyed on the morning of September 15, 2017.

41. **Numerosity**: The members of the class are so numerous that individual joinder of all members is impracticable, if not impossible. Plaintiffs are informed and believe that members of the class total 60 individuals, it not more.

42. **Commonality**: There are common questions of law and fact that predominate over any issue affecting only individual class members. The violations of the rights of the class members arise from a common set of facts and a common and deliberate plan of Defendants to confiscate and destroy personal

property of members of the putative class.  Common questions of law and fact include the following:

      a)    whether the Defendant City's policies, practices, and/or custom of seizing homeless individuals' property without prior notice or the opportunity to recover vital personal possessions before they are destroyed violated and continue to violate Plaintiffs' constitutional rights; and

      b)    whether the Defendant City's policies, practices, and/or custom seizing homeless individuals' property without prior notice or the opportunity to recover vital personal possessions before they are destroyed violated and continue to violate Plaintiffs' federal statutory rights and state statutory rights.

43.    **Typicality**:  The claims of the named Plaintiffs, as the representative parties, are typical of the claims of the class members with respect to the constitutionality and legality of the Defendant City's policies, practices, and conduct at issue here.  The named class representatives' claims arise from the same incident on September 15, 2017 as the absentee class members' claims.  The prosecution of individual actions against the City by individual class members would create a risk of inconsistent and varying adjudications, which would result in variable standards of conduct for Defendant.

44.    **Adequacy**:  The named Plaintiffs will fairly and adequately protect the interests of the class.  The class representatives have no interests that are adverse or antagonistic to those of other class members.  Plaintiffs' Class Counsel will also adequately represent the class.  Plaintiffs' Counsel Carol Sobel is an experienced litigator with more than 30 years of practice as a civil rights attorney. She is experienced in class action litigation and has successfully challenged the issues raised by this action, as well as related issues of police enforcement actions on behalf of homeless communities in Los Angeles.

45. **Notice to the Proposed Class**: Plaintiffs' counsel is in contact with groups and individual advocates for homeless persons who, in the course of providing services to homeless individuals in the City, can assist in notifying and identifying class members in this action.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

46. Claims were timely filed with the Defendant **CITY** pursuant to Cal. Govt. Code § 910 et seq on March 15, 2018. The claims were denied in a letter dated April 13, 2018.

## FIRST CAUSE OF ACTION
### Right to Be Secure From Unreasonable Seizures
### Fourth and Fourteenth Amendments (42 U.S.C. § 1983)
### California Constitution, Art. 1, § 13

47. Plaintiffs reallege and incorporate the allegations set forth in the proceeding paragraphs as though fully set forth herein.

48. Defendant **CITY** and its employees and agents violated Plaintiffs' Fourth Amendment right to be free from unreasonable seizure of their property by confiscating and then destroying Plaintiffs' property without a warrant.

49. These unlawful actions were done with the specific intent to deprive Plaintiffs' of their constitutional right to be secure in their property.

50. Plaintiffs are informed and believe that the acts of the Defendant **CITY** and its employees and agents were intentional in failing to protect and preserve Plaintiffs' property and that, at a minimum, were deliberately indifferent to the likely consequence that the property would be seized and destroyed unlawfully, even though the right at issue was well-established at the time.

51. As a direct and proximate consequence of these unlawful acts, Plaintiffs have suffered and continue to suffer loss of their personal property, pain and suffering, and are entitled to compensatory damages.

## SECOND CAUSE OF ACTION
### Violation of the Takings Clause
### Fifth and Fourteenth Amendment (42 U.S.C. § 1983)
### California Constitution, Art. 1 § 19

52. Plaintiffs reallege and incorporate the allegations set forth in the proceeding paragraphs as though fully set forth herein.

53. Defendant **CITY** and its employees and agents seized and destroyed Plaintiffs' property without offer or opportunity for compensation, in violation of the Takings Clause of the Fifth Amendment.

54. These actions were done with the specific intent to deprive Plaintiffs' of their constitutional right to receive compensation for loss of their property.

55. Plaintiffs are informed and believe that the acts of the Defendant and its employees and agents were intentional in failing to protect and preserve Plaintiffs' property and that, at a minimum, were deliberately indifferent to the likely consequence that the property would be taken unlawfully, and without just compensation, even though the right at issue was well-established at the time.

56. As a direct and proximate consequence of these unlawful acts, Plaintiffs have suffered and continue to suffer loss of their personal property, pain and suffering, and are entitled to just compensation for their property and compensatory damages for their personal injury.

## THIRD CAUSE OF ACTION
### Right to Due Process of Law
### Fourteenth Amendment (42 U.S.C. § 1983)
### California Constitution, Art. 1, § 7

57. Plaintiffs reallege and incorporate the allegations set forth in the proceeding paragraphs as though fully set forth herein.

58. Defendant City and its employees and agents owed a duty to Plaintiffs under the due process clause of the Fourteenth Amendment to provide Plaintiffs

1 | with adequate notice that their personal property was at risk of being seized and/or
2 | destroyed, and to preserve that property or provide adequate means of reclaiming it
3 | in a timely manner.

4     59. Plaintiffs are informed and believe that the acts of the Defendant City and its employees and agents were intentional in failing to protect and preserve Plaintiffs' property and that, at a minimum, were deliberately indifferent to the likely consequence that the property would be seized and destroyed unlawfully, without the opportunity to reclaim it in a timely manner, even though the right at issue was well-established at the time.

    60. As a direct and proximate consequence of these unlawful acts, Plaintiffs have suffered and continue to suffer loss of their personal property, pain and suffering, and are entitled to compensatory damages for their property and personal injury.

## FOURTH CAUSE OF ACTION
**Violation of Title II – Americans with Disabilities Act (ADA)**
**42 U.S.C. § 12101 et seq.**

    61. Plaintiffs reallege and incorporate the allegations set forth in the proceeding paragraphs as though fully set forth herein.

    62. Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by such entity."  42 U.S.C. § 12132.

    63. At all times relevant to this action, Defendant, its employees and agents, were public entities within the meaning of Title II of the ADA and provided programs, services, or activity to the general public.

    64. At all times relevant to this action, Plaintiff Cooley, and all similarly situated class members, were qualified individuals with one or more disabilities

within the meaning of Title II of the ADA and met the essential eligibility requirements under Title II.

65. Defendant's policies and practices in seizing and destroying Plaintiffs' essential papers, mode of transportation, and other important items have utilized methods of administration that violate Plaintiffs' rights on the basis of their disabilities. 28 C.F.R. § 35.130(b)(3).

66. The acts and omissions complained of herein subjected Plaintiffs to discrimination on the basis of their disabilities, in violation of Title II of the ADA, by destroying their property, including bicycle trailers that Plaintiffs use for transportation because of their disability.

67. Defendants knew, or should have known, that the incidence of disabilities for people who are homeless is extremely high, with estimates as great as 40 to 50 percent of homeless individuals suffering from some significant mental, medical, or physical disability, and many suffering from compound disabilities.

68. On information and belief, critical personal papers and other essential property should have been stored in a location that was accessible to an individual with disabilities.  As a public entity, Defendants are required to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability" where, as here, modifications would not "fundamentally alter the nature of the service, program or activity." 28 C.F.R. § 35.130(b)(7).

69. This includes the need to make reasonable accommodations to protect the essential life-protecting and mobility assistive property of persons who are homeless, as well as provide prompt and reasonable access to ensure that individuals are able to recover seized property.  The policies, practices, and procedures challenged in this action, even if otherwise facially neutral, unduly burden disabled persons who are without shelter and within the federal definition of homeless.  The location of the only storage facility at a distance of more than 20

miles failed to provide any accommodation, let alone a "reasonable accommodation" to a population known to have a high percentage of individuals experiencing disabilities and, often, compound disabilities.

70. Defendant, its employees, and agents, committed the acts and omissions alleged herein with intent and/or reckless disregard for the rights of Plaintiffs.

71. Plaintiffs are informed and believe that Defendant and its agents and employees have failed and continue to fail to adopt and enforce adequate policies and procedures for interacting with homeless individuals with disabilities.

### FIFTH CAUSE OF ACTION
**Violation of Unruh Civil Rights Act**
**Cal. Civ. Code § 51**

72. Plaintiffs reallege and incorporate the allegations set forth in the proceeding paragraphs as though fully set forth herein.

73. California Civil Code 51 et seq. provides in pertinent part that: "All persons within the jurisdiction of this state are free and equal, and no matter what their … disability … are entitled to the full and equal … privileges, or services in all business establishments of every kind whatsoever."

74. Defendant, through its agents and employees in the LAPD and Department of Public Works, is a "business establishment" within the meaning of § 51.

75. The acts and omissions complained of herein denied Plaintiff Cooley and similarly situated class members of the right to be free from discrimination on the basis of a disability and were done with intent or reckless disregard for their rights as disabled individuals.

76. As a direct and proximate consequence of these unlawful acts, Plaintiff Cooley, and all similarly situated class members, have suffered and continues to

suffer loss of their statutory rights and are entitled to statutory damages pursuant to California Civil Code §§ 52 and 52.1.

## SIXTH CAUSE OF ACTION
### Violation of Bane Civil Rights Act
### Cal. Civ. Code § 52.1

77. Plaintiffs reallege and incorporate the allegations set forth in the proceeding paragraphs as though fully set forth herein.

78. Defendant's agents and employees have used arrests, threats of arrest and intimidation to interfere with Plaintiffs' rights to maintain their personal possessions in the exercise of Plaintiffs' rights secured by the Constitution of the United States, the Constitution of the State of California, and the statutory laws of the State of California.

79. As a direct and proximate consequence of these unlawful acts, Plaintiffs have suffered and continue to suffer loss of their statutory rights and are entitled to statutory damages pursuant to California Civil Code §§ 52 and 52.1.

## SEVENTH CAUSE OF ACTION
### Violation of Cal. Civ. Code § 2080 et seq.

80. Plaintiffs reallege and incorporate the allegations set forth in the proceeding paragraphs as though fully set forth herein.

81. Defendant's policies, practices, and conduct challenged herein violated California Civil Code § 2080 et seq., in that Defendant's agents and employees failed to protect and preserve Plaintiffs' personal property when the property was on the public sidewalk, failed to provide written notice that the property would be taken, and failed to provide post-deprivation notice so that Plaintiffs would have the opportunity to reclaim it within a reasonable time.

82. Cal. Civ. Code § 2080 et seq. imposes a mandatory duty on public agencies to maintain property that is not abandoned for a minimum of 90 days.

## PRAYER FOR RELIEF

83. Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

**WHEREFORE**, Plaintiffs prays as follows:

1. For a declaratory judgment that Defendant's policies, practices and conduct as alleged herein violate Plaintiffs' rights under the United States and California Constitutions and the statutory laws of the United States and California;

2. For damages according to proof and on the basis of statutory amounts recoverable under California law for the loss of Plaintiffs' property, the violation of their constitutional rights, and for pain and suffering resulting from the unlawful conduct of Defendant, its agents and employees;

3. For costs of suit and attorney fees as provided by law;

4. For such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby respectfully demand that a trial by jury be conducted with respect to all issues presented herein.

Dated: October 21, 2018          Respectfully submitted,

                                 LAW OFFICE OF CAROL A. SOBEL


                                     /s/ Monique A. Alarco
                                 By:  Monique A. Alarcon
                                 Attorneys for Plaintiffs