1  MICHAEL N. FEUER (SBN 111529)
2  City Attorney
   GABRIEL S. DERMER (SBN 229424)
3  Assistant City Attorney
4  **ARLENE H. HOANG (SBN 193395)**
   Deputy City Attorney
5  **RUTH M. KWON (SBN 232569)**
   Deputy City Attorney
6  200 North Main Street, 6th Floor, City Hall East
7  Los Angeles, CA 90012
   Telephone:  (213) 978-7508/6952
8  Facsimile:   (213) 978-7011
9  arlene.hoang@lacity.org/ruth.kwon@lacity.org
   Attorneys for Defendant
10

11              UNITED STATES DISTRICT COURT

12         FOR THE CENTRAL DISTRICT OF CALIFORNIA

13                   WESTERN DIVISION

14
   REBECCA COOLEY, BENJAMIN          No. CV 18-09053 CAS (PLAx)
15 HUBERT and CASIMIR ZARODA,
   individually and on behalf of a class of   **DEFENDANT CITY OF LOS**
16 similarly situated persons,             **ANGELES'S NOTICE OF MOTION**
                                      **AND MOTION TO DISMISS**
17            Plaintiffs,              **PLAINTIFFS' COMPLAINT;**
                                      **MEMORANDUM OF POINTS AND**
18                v.                   **AUTHORITIES**

19 THE CITY OF LOS ANGELES, a         **Filed Concurrently With:**
   municipal entity; Does 1-10,       ▪  **Request for Judicial Notice**
20                                     ▪  **[Proposed] Order**
              Defendants.
21                                     Hearing Date:    April 29, 2019
22                                     Time:            10:00 a.m.
                                       Ctrm:            First Street Courthouse,
23                                                      8D
24
                                       HON. CHRISTINA A. SNYDER
25                                     United States District Judge

26

27

28

1

## NOTICE OF MOTION AND MOTION

2    PLEASE TAKE NOTICE that on April 29, 2019, at 10:00 a.m., or as soon

3 thereafter as the matter may be heard, Defendant City of Los Angeles ("City") will, and

4 hereby does, move this Court for an order dismissing this action pursuant to Rules

5 12(b)(6) and 8 of the Federal Rules of Civil Procedure ("Rules"). This Motion to

6 Dismiss ("Motion") will be made before the Honorable Christina A. Snyder, United

7 States District Judge, located at the Federal Courthouse, 350 W. First Street, Courtroom

8 8D, Los Angeles, CA 90012.

9    This Motion is made upon this Notice, the attached Memorandum of Points and

10 Authorities, the Defendant's Request for Judicial Notice ("RJN"), and all pleadings,

11 records, and other documents on file with the Court in this action, and upon such oral

12 argument as may be presented at the hearing of this motion.

13    This Motion is made following meet and confer correspondence and a telephonic

14 conference on February 25, 2019, pursuant to Local Rule 7-3.

15
 Dated: March 4, 2019                          Respectfully submitted,

16

17

18                                    /s/

19                                    ARLENE H. HOANG
                                      Deputy City Attorney

20                                    Attorneys for Defendant City of Los Angeles

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

**Pages[s]**

I.      INTRODUCTION ........................................................................... 1

II.     RELEVANT PROCEDURAL AND STATUTORY CONTEXT ......................... 4

    A.      Lavan v. City of Los Angeles ....................................................... 4

    B.      LAMC § 56.11 ............................................................................ 5

    C.      Mitchell v. City of Los Angeles .................................................... 6

    D.      Ms. Cooley and Mr. Hubert's Government Claim ........................ 6

    E.      The Instant Lawsuit .................................................................... 7

III.    THE CONSTITUTIONAL CLAIMS SHOULD BE DISMISSED ...................... 7

    A.      The Complaint does not, because it cannot, plead Monell liability. ............. 8

        1.      Plaintiffs' so-called "Monell Allegations" are conclusory. ................ 9

        2.      The Constitutional claims may be dismissed with prejudice because Plaintiffs admit that the City had a "consistent" lawful custom. ........................................................... 10

    B.      Plaintiffs' allegations do not pass muster under Rule 8. ............ 11

    C.      Plaintiffs' Fifth Amendment takings claim is not ripe. ............... 13

IV.     THE ADA CLAIM FAILS FOR LACK OF A VIOLATION ........................ 14

    A.      The Complaint does not allege a denial of a City "program" "by reason of" a disability. ............................................................ 14

    B.      The Complaint does not allege an ADA claim for monetary damages ...... 16

V.      PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED, OR AT A MINIMUM AMENDED, TO COMPLY WITH PREVAILING LAW. 18

    A.      Because Plaintiffs failed to adequately allege a claim under federal law, the Court should decline to exercise supplemental or pendent jurisdiction. ......................................................... 18

    B.      Plaintiffs do not allege compliance with the Government Claims Act. ....... 19

        1.      Mr. Zaroda failed to submit a Government Claim. ........................ 19

        2.      Plaintiffs' allegations regarding their compliance with the

i

Government Claims Act are deficient. ...............................................20

C. Plaintiff's fifth claim for violation of the Unruh Civil Rights Act fails because the City is not a business establishment and there are no allegations of discrimination against Cooley *because of* her disability......21

1. The City is not a "business establishment".......................................21

2. Plaintiffs fail to plead that they were discriminated against because of their disability. ...................................................22

D. Plaintiffs' sixth claim for violation of the Bane Act lacks merit. ...............23

VI. CONCLUSION.......................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Albright v. Oliver*,
   510 U.S. 266 (1994)............................................................................7

*Ashcroft v. Iqbal*,
   556 U.S. ....................................................................................7, 9, 22

*Baker v. McCollan*,
   443 U.S. 137 (1979)............................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................11

*Brown v. L. A. County Counsel*,
   2013 U.S. Dist. LEXIS 64028 (C.D. Cal. April 30, 2013)................17

*Burgess v. Hous. Auth.*,
   2006 U.S. Dist. LEXIS 101454 (N.D. Cal. Dec. 30, 2006)...............22

*Casey v. Lewis*,
   4 F.3d 1516 (9th Cir. 1993) ..............................................................24

*Cline v. Industrial Maint. Eng'g & Contracting Co.*,
   200 F.3d 1223 (9th Cir. 2000) ..........................................................10

*Connick v. Thompson*,
   563 21 U.S. 51 (2011)........................................................................7

*Daniel v. County of Santa Barbara*,
   288 F.3d 375 (9th Cir. 2002) ............................................................13

*Davis v. Kissenger*,
   2014 U.S. Dist. Lexis 152807 (E.D. Cal. Oct. 28, 2014) .................19

*Duvall v. Cty. of Kitsap*,
   260 F.3d 1124 (9th Cir. 2001) ..........................................................16

*Ferguson v. City of Phoenix,*
  157 F.3d 668 (9th Cir. 1998) ........................................................................ 16

*Fogel v. Collins,*
  531 F.3d 824 (9th Cir. 2008) .......................................................................... 8

*Gaxiola v. City of L.A.,*
  No. CV 10-6632 AHM (FMO), 2011 U.S. Dist. LEXIS 112958 (C.D.
  Cal. Aug. 30, 2011) ....................................................................................... 13

*Guerrero v. DeLeon,*
  2012 U.S. Dist. LEXIS 99888, at *13 (C.D. Cal. June 19, 2012) .............. 17

*Hagans v. Lavine,*
  415 U.S. 528 (1974) ...................................................................................... 18

*Harrell v. 20th Century Ins. Co.,*
  934 F.2d 203 (9th Cir. 1991) ........................................................................ 18

*AE ex rel. Hernandez v. Cnty of Tulare,*
  666 F.3d 631 (9th Cir. 2012) .......................................................................... 9

*Hounsell v. Los Angeles City Atty.,*
  2015 U.S. Dist. LEXIS 159013 (C.D. Cal. Nov. 23, 2015) ........................ 18

*Huezo v. L.A. Cmty. Coll. Dist.,*
  672 F. Supp. 2d 1045 (C.D. Cal. 2008) ...................................................... 17

*Inman v. Anderson,*
  294 F.Supp.3d 907, 925 (N.D. Cal. Feb. 27, 2018) .................................... 19

*Karim-Panahi v. Los Angeles Police Dep't.,*
  839 F.2d 621 (9th Cir. 1988) ........................................................................ 19

*Lavan v. City of L.A.,*
  797 F. Supp. 2d 1005 (C.D. Cal. 2011) ........................................... 4, 5, 7, 12

*Leer v. Murphy,*
  844 F.2d 628 (9th Cir. 1988) .......................................................................... 7

*Lipton v. Pathogenesis Corp.,*
  284 F.3d 1027 (9th Cir. 2002) ...................................................................... 11

*Los Angeles Police Protective League v. Gates,*
  907 F.2d 879 (9th Cir. 1990) .......................................................................... 8

iv

*Mei-Ling v. City of Los Angeles,*
  2012 U.S. Dist. LEXIS 199358 (C.D. Cal. April 10, 2012) ........................................ 21

*Mitchell v. City of Los Angeles,*
  No. CV 16-01750 SJO, Dkt. No. 51 (C.D. Cal. Apr. 13, 2016) ........................ 6, 7, 17

*Monell v. Dep't of Social Services of City of New York,*
  436 U.S. 658 (1978) .......................................................................... passim

*Mortimer v. Baca,*
  594 F.3d 714 (9th Cir. 2010) ................................................................ 8

*Oviatt v. Pearce,*
  954 F.2d 1470 (9th Cir. 1992) ............................................................... 8

*Pembaur v. City of Cincinnati,*
  475 U.S. 469 (1986) ............................................................................ 8

*Pombrio v. Villaraigosa,*
  2010 U.S. Dist. LEXIS 110504 (C.D. Cal. Oct. 15, 2010) ........................ 15

*Richardson v. City of Antioch,*
  722 F. Supp. 2d 1133 (N.D. Cal. 2010) .................................................. 23

*Rodriguez v. City of Modesto,*
  535 Fed. App'x 643 (9th Cir. 2013) ........................................................ 9

*Rose v. Rhorer,*
  2014 U.S. Dist. LEXIS 64550 (N.D. Cal. May 9, 2014) ........................... 17

*Sanchez v. City of Fresno,*
  914 F. Supp. 2d 1079 (E.D. Cal. 2012) .................................................. 25

*Spoklie v. Montana,*
  411 F.3d 1051 (9th Cir. 2005) ............................................................... 13

*Sprewell v. Golden State Warriors,*
  266 F.3d 979 (9th Cir. 2001) ................................................................. 10

*St. Louis v. Praprotnik,*
  485 U.S. 112 (1988) ............................................................................ 8

*Starr v. Baca,*
  652 F.3d 1202 (9th Cir. 2011) ............................................................... 9

v

*Trevino v. Gates,*
    99 F.3d 911 (9th Cir. 1996) ..................................................................... 11

*Turner v. Cty. of L.A.,*
    2013 U.S. Dist. LEXIS 171240 (C.D. Cal. Dec. 2, 2013)............................. 9

*United Mine Workers of America v. Gibbs,*
    383 U.S. 715 (1966)................................................................................... 18

*Violes v. Reavis,*
    2014 U.S. Dist. LEXIS 144139 (S.D. Cal. Sept. 2, 2014)........................... 19

*Wade v. Regional Credit Ass'n,*
    87 F.3d 1098 (9th Cir. 1996) ................................................................... 18

*Weinreich v. Los Angeles Cty. Metropolitan Transp. Authority,*
    114 F.3d 976 (9th Cir. 1997) ............................................................ 14, 15

*Weisbuch v. County of L.A.,*
    119 F.3d 778 (9th Cir. 1997) ................................................................... 10

*Williams v. Cty. of Alameda,*
    2018 U.S. Dist. LEXIS 185930 (N.D. Cal. Oct. 30, 2018) ........................ 21

*Wynn v. NBC,*
    234 F. Supp. 2d 1067 (C.D. Cal. 2002) ................................................... 10

**State Cases**

*Burnett v. San Francisco Police Dep't,*
    36 Cal. App. 4th 1177 (1995) ................................................................. 21

*Carter v. City of Los Angeles*
    224 Cal. App. 4th 808 (2014) ................................................................. 21

*City of San Jose v. Superior Court,*
    12 Cal.3d 447 (1974) ............................................................................... 19

*City of Stockton v. Superior Court,*
    42 Cal.4th 730 (2007) ............................................................................. 19

*Gabrielle A. v. County of Orange,*
    10 Cal. App. 5th 1268, 1290 (2017) ....................................................... 23

vi

*Harrison v. City of Rancho Mirage,*
 243 Cal. App. 4th 162 (2015) ................................................................ 21

*Katzberg v. Regents of University of California,*
 29 Cal.4th 300 (2002) ............................................................................ 7

*Qualified Patients Assn. v. City of Anaheim,*
 187 Cal. App. 4th 734 (2010) .............................................................. 21

*Schoshinski v. City of Los Angeles,*
 9 Cal. App. 5th 780, 792 (2017) .......................................................... 24

*State of California v. Superior Court,*
 32 Cal.4th 1234 (2004) ........................................................................ 19

*Towery v. State of California*
 14 Cal.App.5th 226, 236 (2017) .......................................................... 24

**Federal Statutes**

42 U.S.C.§ 12132 ...................................................................................... 14

28 U.S.C. §1367(c)(3) ............................................................................... 18

Title II of the ADA (42 U.S.C.§ 12132) ..................................... 3, 14, 16

**State and City Laws**

Bane Act ........................................................................................ 19, 23, 24

Cal. Civ. Code § 51 ............................................................................ 20, 22

Cal. Civ. Code § 51(a) ............................................................................. 21

Cal. Civ. § 51.7 ......................................................................................... 23

Cal. Civ. § 52.1 ......................................................................................... 23

Cal. Civ. Code § 2080 ..................................................................... 3, 24, 25

Cal. Civ. Code § 2080.1 ........................................................................... 24

Cal. Civ. Code § 2080.2 ........................................................................... 24

Cal. Govt. Code §815.2(b) ....................................................................... 24

Cal. Govt. Code §820.4.................................................................................24

Cal. Gov. Code §§ 905 and 945.4.................................................................19

Government Claims Act (Cal. Gov. Code)......................................3, 13, 19, 20

Los Angeles Municipal Code § 56.11 ......................................................*passim*

Unruh Civil Rights Act .............................................................3, 20, 21, 22

## I.     INTRODUCTION

It is the 21st century in the richest state in the nation; yet for lack of affordable permanent housing, people sleep on sidewalks. Those sidewalks are cleaned by public sanitation workers. Their efforts keep the sidewalks safe and sanitary for pedestrian traffic while also making the sidewalks safer and more sanitary (to the extent possible) for the homeless communities who pitch tents on those sidewalks at night.

This lawsuit arises from one mid-morning sidewalk cleaning in the 3rd and Rose Avenue area within the Venice neighborhood of Los Angeles. Compl. ¶ 19. Named plaintiffs Rebecca Cooley, Benjamin Hubert, and Casimir Zaroda are individuals who at the time of the sidewalk-cleaning lived on the sidewalks in that area. Plaintiffs *admit* that "[c]onsistently, for over two years," the City provided advance written notice of a sidewalk-cleaning (Compl. ¶ 20). But Plaintiffs assert that **on a single occasion –** on September 15, 2017-- they did not receive written notice (which the City disputes[1]), so stored and left their personal belongings on the sidewalks.

When Ms. Cooley, Mr. Hubert, and Mr. Zaroda returned to their belongings, the sidewalks had already been closed and the City's Sanitation workers were in the process of cleaning. Nevertheless, City employees permitted Plaintiffs to "cross the yellow-tape" to retrieve some of their belongings. Plaintiffs sue because some portion of their personal belongings was allegedly lost.[2] The City is the sole named Defendant. The City employees who posted notices and cleared and sanitized the sidewalks were from the Department of Public Works (specifically, the Bureau of Sanitation, Watershed

---

[1]  Plaintiffs' counsel has been informed that City records show that City employees posted notice in the 3rd and Rose Avenue area two days prior to the September 15, 2017 sidewalk cleaning, consistent with the City's lawful custom.

[2] Notably, Plaintiffs do not allege whether their property was disposed of as hazardous waste or a health and safety hazard, or whether it was removed and stored in a City-contracted facility. These factual distinctions are legally significant, yet they are intentionally obfuscated in the Complaint.

Protection and Solid Resources divisions). They were accompanied by officers from the Los Angeles Police Department who effectuated the road closures. Additionally, City contractors were involved in hazardous waste disposal and storage of personal belongings.[3] No one is alleged to have cited, arrested, or harassed any plaintiff. *See* Compl. ¶ 24.

All the City employees and contractors were operating under Los Angeles Municipal Code § 56.11 ("Section 56.11" or "LAMC § 56.11"), which was most recently amended in April 2016. Section 56.11 was amended to balance the needs of all City residents, including the City's vulnerable homeless population, by requiring notice (pre-removal and post-removal) and 90 days' storage of personal belongings left in public areas. As further explained in this Motion, *even if* the Court were to assume the Complaint's factual allegations to be true (which they are not), the Complaint should be dismissed as a matter of law on the following grounds:

▪ No *Monell* liability and failure to state a claim otherwise:

First, all the state and federal Constitutional claims against the City must be dismissed (first, second and third claims for relief). Plaintiffs have not and cannot allege *facts* demonstrating any City policy or custom violates the Constitution, as required by *Monell v. Dep't of Social Services of City of New York,* 436 U.S. 658 (1978).  Rather, Plaintiffs allege the City's employees **departed** from the City's policy or custom ***on one occasion***. *See* Compl. ¶ 20 ("Consistently, for over two years, the Defendant CITY would post signs that provide three-days' notice of the area cleanings" and Plaintiffs had "prior notice of the sidewalk cleaning, throughout this time period.") Even if Plaintiffs could establish that the City had a custom or practice under *Monell*, Plaintiffs do not provide notice to the City as to the purported unconstitutional misconduct at issue; as

---

[3] LAPD officers effectuated the road closures for the Sanitation employees and vehicles. City contractors were also involved in the sidewalk clean-up and the storage of the personal property. All belongings were stored by a third-party City contractor – not the City.

such, the Complaint should be dismissed pursuant to Rule 8. Finally, the Takings claim is not ripe because Plaintiffs have not sought and been denied state judicial remedies. Plaintiff's First, Second, and Third claims for relief should therefore be dismissed under Rule 12(b)(6) and 8.

- ▪ No ADA violation alleged:

Second, Plaintiffs' fourth claim for violation of Title II- Americans with Disability Act ("ADA") is fatally flawed. In sum, Plaintiffs allege that Ms. Cooley's disability required the City to depart from its policies with respect to removal or storage of her personal belongings. However, nowhere does the Complaint allege that the City treated any plaintiff differently *because of* their disabilities, or that any of ADA-cognizable City "service or program" provided to the general public was denied to Ms. Cooley due to her disabilities. Indeed, Ms. Cooley admits that her specific request to be exempted from the sidewalk-cleaning was partially, if not entirely, granted. The Fourth claim for relief should be dismissed without leave to amend.

- ▪ The state claims are invalid and Plaintiffs lack standing to assert them:

Third, even if the Court were to exercise supplemental jurisdiction over the remaining state law claims— which it shouldn't do—the fifth, sixth and seventh claims for relief should be dismissed for multiple reasons including:

- ▪ Plaintiffs fail to adequately allege compliance with the Government Claims Act;
- ▪ The City is not a "business establishment" for purposes of the Unruh Act, and did not violate the ADA or intentionally discriminate against Ms. Cooley because of her disability;
- ▪ Plaintiffs lack standing to pursue claims under the Bane Act or California Civil Code section 2080, *et seq.*; and
- ▪ Even if Plaintiffs have standing, the City did not threaten violence or arrest, did not violate any Constitutional or statutory provision, and cannot be liable under the facts alleged in the Complaint.

For the foregoing reasons, Defendant respectfully requests that the City's Motion

1   to Dismiss be granted in its entirety without leave to amend.

2   **II.    RELEVANT PROCEDURAL AND STATUTORY CONTEXT**

3           Attempting to villainize the City and its employees from the Sanitation and Police
4   departments, Plaintiffs accuse the City of having violated federal court injunctions
5   relating to the treatment of homeless property. The Complaint neglects to mention,
6   however, that both injunctions they cite were preliminary injunctions, only one of which
7   was in effect in September 2017, and in Skid Row *not* 3rd and Rose or Venice.

8           Furthermore, Plaintiffs admit that "[c]onsistently, for over two years, the
9   Defendant CITY would post signs that provide three days' notice of the area cleanings."
10  Compl. ¶ 20. But Plaintiffs neglect to explain why that is so: after *Lavan* was settled for
11  monetary relief, the City voluntarily enacted and ratified ordinances (as codified in
12  LAMC § 56.11), which provide the very safeguards the *Lavan* Court sought by its
13  preliminary injunction.

14          **A.      Lavan v. City of Los Angeles**

15          On June 23, 2011, the Court in *Lavan v. City of Los Angeles* issued a preliminary
16  injunction, which barred the City from seizing personal property in Skid Row, subject to
17  health and safety provisions, notice, and storage. For the duration of the *Lavan* suit, the
18  Court's preliminary injunction enjoined the City as follows:

19          1. Seizing property in Skid Row absent an objectively reasonable belief that
20          it is abandoned, presents an immediate threat to public health or safety, or is
            evidence of a crime, or contraband; and
21
22          2. Absent an immediate threat to public health or safety, destruction of said
            seized property without maintaining it in a secure location for a period of
23          less than 90 days.

24          Defendant City, its agents and employees, is further directed to leave a
25          notice in a prominent place for any property taken on the belief that it is
            abandoned, including advising where the property is being kept and when it
26          may be claimed by the rightful owner.

27          *Lavan v. City of L.A.,* 797 F. Supp. 2d 1005, 1020 (C.D. Cal. 2011).
28

The Court made clear that under the terms of the preliminary injunction, "[t]he City *will still be able to lawfully seize and detain property, as well as remove hazardous debris and other trash*; issuance of the injunction would merely prevent it from unlawfully seizing and destroying personal property that is not abandoned without providing any meaningful notice and opportunity to be heard." *Lavan*, 707 F.Supp.2d at 1019-20 (italics added). The *Lavan* plaintiffs did not seek a permanent injunction; rather, the lawsuit was settled for monetary damages and attorney's fees.

**B.**   **LAMC § 56.11**

On July 18, 2015 and April 11, 2016, the City voluntarily amended LAMC Section 56.11 by duly enacted and ratified ordinances. Section 56.11 was enacted "to balance the needs of the residents and public at large to access clean and sanitary public areas consistent with the intended uses for the public areas with the needs of the individuals, who have no other alternatives for the storage of personal property, to retain access to a limited amount of personal property in public areas." RJN, Ex. A (LAMC § 56.11(1)) In accord with the *Lavan* preliminary injunction, the City requires, *inter alia*, pre-removal and post-removal notice, storage of up to 90 days, and a process by which the owner can recover property:

> "**Pre-Removal Notice**. Pre-removal notice shall be deemed provided if a written notice is provided to the Person who is Storing or claims ownership of the Personal Property, or is posted conspicuously on or near the Personal Property." RJN Ex. A (LAMC § 56.11(4)(a).)

> "**Post-Removal Notice**. Upon removal of Stored Personal Property, written notice shall be conspicuously posted in the area from which the Personal Property was removed." RJN Ex. A (LAMC § 56.11(4)(b).)

> No Person shall Store any Personal Property in a Public Area if the Personal Property, whether Attended or Unattended, constitutes an immediate threat to the health or safety of the public. Without prior notice, the City may remove and may discard any Personal Property Stored in a Public Area if the Personal Property poses an immediate threat to the health or safety of the public. RJN Ex. A (LAMC § 56.11(3)(g).)

5

"**Storage and Disposal**. . . . (b) Except as specified herein, the City shall store impounded Personal Property for 90 days, after which time, if not claimed, it may be discarded." RJN Ex. A (LAMC § 56.11(5)(b).)

"**Repossession**. The owner of impounded Personal Property may repossess the Personal Property prior to its disposal upon submitting satisfactory proof of ownership." RJN Ex. A (LAMC § 56.11(6).)

In the Complaint, Plaintiffs reference the *prior* version of Section 56.11, without explaining that LAMC has since been twice amended.  *See* Compl. ¶ 3.

### C.     <u>Mitchell v. City of Los Angeles</u>

On March 14, 2016, Plaintiffs filed the Mitchell lawsuit, and on April 13, 2016, they obtained a preliminary injunction. The order enjoined the City from certain conduct with respect to personal property within Skid Row areas. *See Mitchell v. City of Los Angeles*, No. CV 16-01750 SJO (GJSx), Dkt. No. 51 (C.D. Cal. Apr. 13, 2016). The Court expressly rejected the plaintiffs' proposed order, holding that "[t]he Court will not issue a sweeping preliminary injunction that will only serve to instigate further litigation to enforce the injunction. The Court also is sensitive to placing too onerous a burden on the City, especially given the scope of the homelessness challenge in Los Angeles." *Id.* The *Mitchell* case is still pending, although trial has been continued multiple times due to a potential settlement.

### D.     <u>Ms. Cooley and Mr. Hubert's Government Claim</u>

Represented by counsel, Ms. Cooley and Mr. Hubert submitted a joint government claim dated March 15, 2018, which was received by the City Clerk's Office on March 16, 2018. RJN Ex. B. That letter was submitted "on behalf of Benjamin Hubert and Rebecca Cooley and all similarly situated individuals in the vicinity of 3rd and Rose on September 15, 2017." Mr. Zaroda did not submit a separate government claim for the

1   loss of his transit pass or any other property which was purportedly lost.[4]

2       **E.**       **The Instant Lawsuit**

3         On October 21, 2018, Plaintiffs, represented by the same counsel for the plaintiffs

4   in *Mitchell* and *Lavan*, filed this lawsuit as a putative class action. The Complaint was

5   served on the City or about January 10, 2019.

6   **III.**    **THE CONSTITUTIONAL CLAIMS SHOULD BE DISMISSED**

7         Plaintiffs' first three claims — purported Section 1983 claims for monetary

8   damages under the Constitution[5] — should be dismissed for failure to state a claim.

9   "Section 1983 imposes two essential proof requirements upon a claimant: (1) that a

10   person acting under color of state law committed the conduct at issue, and (2) that the

11   conduct deprived the claimant of some right, privilege, or immunity protected by the

12   Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th

13   Cir. 1988). "Section 1983 'is not itself a source of substantive rights,' but merely

14   provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v.*

15   *Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3

16   (1979)). Thus, "Section 1983 imposes liability for violations of rights protected by the

17   Constitution, not for violations of duties of care arising out of tort law." *Baker*, 443 U.S.

18   at 146. And a Section 1983 claim against a municipality cannot be based upon a mere

19   theory of respondeat superior. *See Connick v. Thompson*, 563 21 U.S. 51, 60-61 (2011);

20   *Ashcroft v. Iqbal*, 556 U.S. at 676.

21         With respect to the first requirement, Plaintiffs fail to state facts supporting *Monell*

22   liability. The Complaint is devoid of factual allegations regarding any municipal policy

23   or custom; that alone is sufficient for dismissal. What is more, here the Complaint

24   *negates Monell* liability: Plaintiffs allege that the purported failure to provide notice on

---

25        [4] During the meet and confer, Plaintiffs' counsel confirmed that a separate
26   government claim was not submitted by Mr. Zaroda.

27        [5] There is no implied cause of action for damages for alleged violations of the
     State Constitution. *Katzberg v. Regents of University of California*, 29 Cal.4th 300, 326
28   (2002).  To the extent the Complaint seeks equitable relief under the state Constitution,
     each claim should be dismissed for failure to state a claim under Rule 8.

September 15, 2017 was a *departure* from the City's customary practices. Accordingly, the Constitutional claims should be dismissed without leave to amend.

As to the second Section 1983 requirement of a constitutional injury, even if the Court were to assume *Monell* liability, Plaintiffs do not allege facts sufficient to provide fair notice to the City of the conduct at issue and how that purported conduct amounts to a Constitutional violation. Finally, even if the Court were to grant leave to amend as to Plaintiffs' Fourth and Fourteenth Amendment Due Process claims, Plaintiffs' takings claim is not ripe and should be dismissed for lack of subject matter jurisdiction.

### A. The Complaint does not, because it cannot, plead Monell liability.

Plaintiffs do not state a *Monell* claim against the City. A municipality can only be held liable for injuries caused by the execution of its policy or custom or by those whose edicts or acts may fairly be said to represent official policy. *Monell*, 436 U.S. at 694. Additionally, "a local governmental body may be liable if it has a *policy of inaction* and such inaction amounts to a failure to protect constitutional rights." *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (citing *City of Canton v. Harris*, 489 U.S. 378, 388, 109 (1989)) (italics added). The Ninth Circuit has held that "*the policy of inaction* must be more than mere negligence; it must be a conscious or deliberate choice among various alternatives." *Mortimer v. Baca*, 594 F.3d 714, 716 (9th Cir. 2010) (italics added.)

The Ninth Circuit defines a "policy" as a "deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008); *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-480 (1986) ("The 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make it clear that municipal liability is limited to action for which the municipality is actually responsible."). A "custom" is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *St. Louis v. Praprotnik*, 485 U.S. 112, 127

(1988); *Los Angeles Police Protective League v. Gates*, 907 F.2d 879, 890 (9th Cir. 1990). Here, there are no factual allegations of any policy of action or inaction.

        1.    <u>Plaintiffs' so-called "Monell Allegations" are conclusory.</u>

Rather, Plaintiffs' Constitutional claims are based upon conclusory, not factual allegations. Plaintiffs fail to allege any facts regarding the substance of any policy or custom. That is because Plaintiffs know that no such policy or custom does (or can) exist since the operative Section 56.11 became effective in April 2016.[6] *See* RJN Ex. A.

"Since *Iqbal*, courts have repeatedly rejected conclusory *Monell* allegations that lack factual content from which one could plausibly infer Monell liability." *Rodriguez v. City of Modesto*, 535 Fed. App'x 643, 646 (9th Cir. 2013) (affirming district court's dismissal of *Monell* claim based only on conclusory allegations and lacking factual support). In *AE ex rel. Hernandez v. Cnty of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012), the Court held that pleadings for *Monell* claims are subject to the standard set forth in *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011). In *Starr*, the Court held that allegations in a complaint cannot simply recite the elements of a claim for relief, "but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr*, 652 F.3d at 1216. The allegations must also plausibly suggest an entitlement to relief, "such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id*.

The instant Complaint is devoid of factual allegations and crammed with conclusory ones. While the Complaint contains a section entitled "Monell allegations" (Compl. ¶ 34-38), rather than containing facts sufficient to give fair notice to the City regarding the substance or content of any policy, custom or training practice, that section recites a cornucopia of legal methods by which a Monell claim *might be* brought. Yet

---

[6] Any allegations about conduct prior to the amendments of Section 56.11 do not present a live controversy, and any claims relying upon such conduct are moot. *See Native Village of Noatak v. Blatchford*, 38 F.3d 1505, 1510 (9th Cir. 1994); *see also Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328-29 (11th Cir. 2004); *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988).

1    there are no factual allegations regarding any actual City policy or any City failure to

2    provide a "particular kind of training" that shows a "deliberate indifference to the

3    possibility of a constitutional violation." *See Turner v. Cty. of L.A.*, No. CV 13-4149,

4    2013 U.S. Dist. LEXIS 171240, at *15 (C.D. Cal. Dec. 2, 2013). At bottom, Plaintiffs do

5    not demonstrate that the City had any official policy or custom, but rather speculate that

6    one exists. The Constitutional claims should be dismissed as a matter of law.

7                      2.    <u>The Constitutional claims may be dismissed with prejudice because</u>

8                            <u>Plaintiffs admit that the City had a "consistent" lawful custom.</u>

9            The City respectfully requests that the Court dismiss the *Monell* claims without

10   leave to amend, because amendment here would be futile. Plaintiffs admit – because they

11   cannot deny – that the City's "consistent" custom or practice for over two years before

12   the September 15, 2017 sidewalk cleaning (and since) was *to provide notice* of area

13   cleanings, as required by the amended Section 56.11.

14           Plaintiffs have therefore pled themselves out of a *Monell* claim against the City.

15   The Ninth Circuit has held that a plaintiff can plead himself out of court by pleading

16   facts contrary to his claim. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988

17   (9th Cir. 2001) *as amended by* 275 F.3d 1187 (9th Cir. 2001) (holding that "a plaintiff

18   can 'plead himself out of a claim by including unnecessary details contrary to his

19   claims.'"); *Cline v. Industrial Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1232

20   (9th Cir. 2000) (same); *see also Wynn v. NBC*, 234 F. Supp. 2d 1067, 1101 (C.D. Cal.

21   2002). Indeed, the Ninth Circuit has held that "[i]f the pleadings establish facts

22   compelling a decision one way, that is as good as if depositions and other expensively

23   obtained evidence on summary judgment establishes the identical facts." *Weisbuch v.*

24   *County of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997)

25           By their Complaint, Plaintiffs allege that the area cleaning on September 15, 2017

26

27

28

                                              10

"was not noticed."[7]  Compl. ¶ 21. But in doing so, Plaintiffs also concede the truth: that the City had provided notice "consistently" and "throughout" a two-year time period. *See* Compl. ¶ 20 ("Consistently, for over two years, the Defendant CITY would post signs that provide three-days' notice of the area cleanings," and Plaintiffs had "prior notice of the sidewalk cleaning, throughout this time period.")  Indeed, Mr. Zaroda was admittedly familiar with the noticed street cleanings. Compl. ¶ 23. By these allegations, Plaintiffs admit that the purportedly unconstitutional conduct of September 15, 2017 was an isolated incident, insufficient to support a *Monell* claim. *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (holding that a *Monell* claim must be based on more than "isolated or sporadic incidents" and instead "must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."); *see also Canton*, 489 U.S. at 392 (a *Monell* claim cannot be established by merely pointing to something that the city could have done to prevent the incident).

When "the basic facts are alleged and have been analyzed" from a litigant's pleadings and it is apparent that that a plaintiff "cannot cure the flaws" in his claims, dismissal without leave to amend is appropriate. *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002). Here, it is apparent that Plaintiffs cannot cure the flaws in their theory of *Monell* liability; as such, this Court may dismiss Plaintiffs' Constitutional claims for relief without leave to amend.

**B.       Plaintiffs' allegations do not pass muster under Rule 8.**

Additionally, Plaintiffs' federal and state constitutional claims fail to provide notice to the City of its purported wrongdoing. Pursuant to Rule 8, a plaintiff must "plead a short and plain statement of the elements of his or her claim, and each allegation must be "simple, concise, and direct." Rule 8(d)(1). That "short and plain" statement

---

[7] As previously explained, the City disputes that Plaintiffs did not receive notice for the September 15, 2017 sidewalk cleaning. To the extent that Plaintiffs assert that prior notices were deficient, that issue is not before this Court.

must provide fair notice to defendant of the claims against them and the grounds on which those claims rest. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Something labeled a complaint but...prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint," and "impose[s] unfair burdens on litigants and judges." *McHenry v. Renne*, 84 F.3d 1172, 1179-80 (9th Cir. 1996). Notably, "[t]he propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit." *McHenry*, 84 F.3d at 1179. Thus, even where some possible claims appear in a complaint, dismissal of the entire action may still be warranted.

In their Complaint, although Plaintiffs allege facts concerning the City's *historical* misconduct, Plaintiffs do not allege facts upon which this Court can reasonably infer that Plaintiffs were subjected to unconstitutional conduct on September 15, 2017. *Lavan* provides guidance in this regard. It is the City's position that it has instituted the procedural safeguards within the *Lavan* preliminary injunction. *See* LAMC § 56.11. In *Lavan*, this Court required that homeless individuals in Skid Row are entitled to, *inter alia*, notice and storage of detained personal property for at least 90 days. 693 F.3d 1022, 1025, 1032. If procedural protections are followed, no Fourth or Fourteenth Amendment claim arises. *Id*. at 1032. The Court made clear that under the preliminary injunction, "[t]he City [would] still be able to lawfully seize and detain property, as well as remove hazardous debris and other trash. *Lavan*, 707 F.Supp.2d at 1019-20 (italics added).

Here, even though Plaintiffs assert that the City violated the *Lavan* preliminary injunction (which the City disputes), the Complaint omits or obfuscates any facts from which the Court can make such an inference. As pled, the City does not have Rule 8 notice regarding the nature of the purported wrongful acts: it is unclear whether the City's purported misconduct is by action or inaction, negligent or intentional (or even

non-existent) conduct, or by participation, direction or ratification.[8] The Complaint does not explain who the tortfeasor is: it is unclear whether and how the actions of a Sanitation employee, LAPD employee, and/or a City contractor (present at the sidewalk cleaning or at the storage facility) are at issue. Plaintiffs cannot evade dismissal by deliberately omitting allegations necessary to establish Constitutional injury. The Complaint should be dismissed under Rule 8.

### C.   <u>Plaintiffs' Fifth Amendment takings claim is not ripe.</u>

Plaintiffs' takings' claim should be dismissed because it is not sufficiently pled and is not ripe. The Takings Clause of the Fifth Amendment, which applies here via the Fourteenth Amendment, prohibits the taking of private property for public use without just compensation. U.S. Const. amend. V.  The Complaint does not even contain conclusory allegations that Plaintiffs' property was taken for public use: that is because it was not taken for any use, much less public use.

Moreover, Plaintiffs' takings claim is not ripe because Plaintiffs have not sought monetary damages through either the government claims process or the state courts. "A federal takings claim is not ripe until a litigant has '[sought] compensation through the procedures the State has provided for doing so.'" *Spoklie v. Montana*, 411 F.3d 1051, 1057 (9th Cir. 2005) (brackets in original) (citation omitted); *see also Daniel v. County of Santa Barbara*, 288 F.3d 375, 382 (9th Cir. 2002) ("In a physical takings case, as in a regulatory takings case, the property owner must have sought compensation for the alleged taking through available state procedures."); *Gaxiola v. City of L.A.*, No. CV 10-6632 AHM (FMO), 2011 U.S. Dist. LEXIS 112958, at *52-53 (C.D. Cal. Aug. 30, 2011) (dismissing takings claim without prejudice for lack of subject matter jurisdiction).

Here, Plaintiffs do not, because they cannot, allege that they have pursued

---

[8] Indeed, the Complaint appears to concede that Mr. Zaroda received constructive notice (Compl. ¶ 23); that unidentified plaintiffs received post-removal notice of some sort (Compl. ¶ 33); and that none of the plaintiffs sought to recover any detained property within 90 days or at all (Compl. ¶33).

compensatory remedies by filing suit in state court. Plaintiffs did not list the monetary value of their purported lost belongings in their government claims with the City, as required by the Government Claims Act. RJN Ex. B; Gov Code. § 910(f). Plaintiffs' second claim for relief for violation of the Takings Clause should be dismissed as unripe and/or for lack of subject matter jurisdiction.

## IV.   THE ADA CLAIM FAILS FOR LACK OF A VIOLATION

The Complaint does not state an ADA violation, much less the intentional discrimination required for money damages.[9] That is because neither Ms. Cooley (who has Crohn's disease) nor any other named Plaintiff[10] was excluded from any City service, program, or activity "by reason of" any disability. The fourth claim for relief under the ADA should be dismissed.

### A.   The Complaint does not allege a denial of a City "program" "by reason of" a disability.

Ms. Cooley attempts to sue the City under Title II of the ADA.[11] Title II provides that "no qualified individual with a disability shall, *by reason of such disability,* be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.§ 12132 (italics added).

In order to allege a public program or service violates Title II of the ADA, a

---

[9] The Complaint does not seek injunctive relief.

[10] Mr. Zaroda is alleged to have unidentified "psychological disabilities" (Compl. ¶ 15), but he has not alleged an ADA claim or filed a government claim for the state law claims relating to disability discrimination. Compl. ¶ 64; RJN Ex. B.

[11] Ironically, provisions of Section 56.11 were drafted in consideration for disabled individuals. Section 56.11 prohibits the public from blocking the sidewalks in a manner that would hinder disabled access. *See* RJN Ex. A (LAMC § 56.11(3)(d)) ("No person shall Store any Personal Property in a Public Area in such a manner that it does not allow for passage as required by the [ADA]." In addition, Section 56.11 gives protections for the seizure of an "operational bicycle or operational walker, crutch or wheelchair." RJN Ex. A (LAMC § 56.11(2)(c).)

14

plaintiff must show all of the following: (1) she is a "qualified individual with a disability;" (2) she was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was *by reason of her disability. Weinreich v. Los Angeles Cty. Metropolitan Transp. Authority*, 114 F.3d 976, 978 (9th Cir. 1997). The duty to provide "reasonable accommodations" under the ADA arises only when a public policy discriminates "on the basis of disability." *Weinreich*, 114 F.3d at 978.

Assuming for purposes of this motion only that Ms. Cooley is "disabled," and "otherwise qualified," her ADA claim fails because it does not identify any City program, service, or policy to which Ms. Cooley was excluded. Rather, Ms. Cooley appears to allege that her disability *exempted* her personal belongings from the City's sidewalk-cleaning and clearing efforts.  Moreover, Ms. Cooley does not allege that the City-contracted storage facility itself had architectural barriers, but rather that the "location" of the storage facility violated ADA. Defense counsel has not found any published Ninth Circuit caselaw that would require a municipality to establish a facility closer to a disabled individual for the storage of impounded vehicles, or for any other detained personal property such as the personal belongings at issue in this case.

But even if this Court were *to assume* that a City program exists *and assumed* that Ms. Cooley was "excluded" from such a program, Ms. Cooley has not established that she or anyone was excluded "by reason of [their] disability." Rather, Plaintiffs admit their purported lack of access to their property is not by reason of any disability, but due to their financial circumstances. Compl. ¶ 33.  Homelessness, poverty, and other economic disadvantages are disabling, but they do not qualify as disabilities under the ADA. *See* 28 C.F.R. § 35 app. B ("Physical or mental impairment does not include . . . environmental, cultural, economic, or other disadvantages, such as having a prison record, or being poor.").

Accordingly, courts have held that exclusion based upon financial circumstances

cannot form the basis of an ADA claim. *See, e.g., Weinreich*, 114 F.3d at 979 ("[Plaintiff's] lack of 'meaningful access' to the Reduced Fare Program was not due to his medical disability, but rather to his inability to satisfy a condition of eligibility because of his financial circumstances."); *see also Pombrio v. Villaraigosa*, No. 10-5604 GHK (MAN), 2010 U.S. Dist. LEXIS 110504, at *11 (C.D. Cal. Oct. 15, 2010) (holding that the library's no-bags policy is not an ADA violation because "[the plaintiff's] disability is implicated only because it made it painful for him to walk to a place where he was able to leave his bags," and enforcement of that policy was not discriminatory because it was not due to his disability). The Complaint does not allege an ADA claim.

### B.   <u>The Complaint does not allege an ADA claim for monetary damages</u>

*Even if* the Court were to *assume* an ADA violation exists, the Complaint does not state an ADA claim for monetary damages, the only relief sought here. To recover monetary damages under Title II of the ADA, it is not enough to prove that an ADA violation exists, a plaintiff must assert intentional discrimination on the part of the defendant. *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001); *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998).

In the Ninth Circuit, the "deliberate indifference" standard applies. *Duvall*, 260 F.3d at 1139. Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that the likelihood. *Duvall*, 260 F.3d at 1139 (citing *City of Canton,* 489 U.S. at 389). To meet the second prong, the local entity's failure to act must be more than "bureaucratic slippage;" the failure to act "must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Id*. Deliberate indifference is often alleged by way of repeatedly denied requests for accommodation.

But here Ms. Cooley does not allege that her property was destroyed or that she was denied access to reclaiming it with deliberate indifference to (or by reason of) her disability. Instead, Ms. Cooley's sole reference to any request directed to a City employee (an LAPD officer) appears to have been *granted*. Specifically, Ms. Cooley

1  alleges that "due to her physical limitation" (which is not alleged to have any

2  relationship with her purported Crohn's disease disability), she required certain

3  assistance *from her husband* to carry back her "bike, sleeping bag, and tent." As pled,

4  that request appears to have been largely, if not entirely, *granted* by a sympathetic City

5  police officers, even though the City's sidewalk had already been closed with yellow-

6  tape and the sidewalk cleaning was in process. *See* Compl. ¶¶ 25-26. (any items fitting

7  60-gallon trash bag, two operable bikes. and one sleeping bag recovered by being

8  permitted to cross yellow-tape). These allegations do not meet the standard for

9  negligence, much less the requisite deliberate indifference.[12] *See, e.g.*, *Guerrero v.*

10  *DeLeon*, No. 12-299 PA(SH), 2012 U.S. Dist. LEXIS 99888, at *13 (C.D. Cal. June 19,

11  2012) (approved and adopted by *Guerrero v. DeLeon*, No. 12-299 PA(SH), 2012 U.S.

12  Dist. LEXIS 99888, at *1 (C.D. Cal. June 19, 2012)) (holding that exhibits attached to

13  complaint undermined allegations of discriminatory intent on the basis of disability).

14      Furthermore, Ms. Cooley herself appears to admit that she did not travel to the

15  City's designated storage facility or attempt to recover any of her belongings by other

16  means from the City. Compl. ¶ 33. As such, Ms. Cooley has not alleged either her own

17  standing *or* the City's deliberate indifference under the ADA. *See Brown v. L. A. County*

18  *Counsel*, No. 13-00154 PA (VBK), 2013 U.S. Dist. LEXIS 64028, *27-28 (C.D. Cal.

19  April 30, 2013) (dismissal of ADA claim where no factual allegation "from which it

20  could reasonably be inferred that plaintiff sought any more appropriate housing, or that

21  his housing was assigned or denied intentionally because of his disability"); *see also*

22  *Rose v. Rhorer*, No. 13-03502 WHO, 2014 U.S. Dist. LEXIS 64550, at *17 (N.D. Cal.

23

24      [12] Plaintiffs' references to the high incidence rates of disabilities among the
homeless and the impact of facially-neutral policies (Compl. ¶¶ 67-69) appear to be

25  copy-and-paste relics from the *Mitchell* complaint, which sought an injunction under the
ADA. These allegations do not bear on the deliberate-indifference test that is required

26  for ADA claims seeking money. *See, e.g.*, *Huezo v. L.A. Cmty. Coll. Dist.*, 672 F. Supp.

27  2d 1045, 1046 (C.D. Cal. 2008) ("Liability under the ADA . . . can be established
without a showing of discriminatory intent. To recover compensatory damages, however,

28  intentional discrimination must be proven.")

17

May 9, 2014) (no deliberate indifference where plaintiff had not alleged any request or refusal for an accommodation to use the reservation process for a homeless shelter, which involved long lines at resource centers that had changing locations and inconsistent hours). The ADA claim for damages fails and should be dismissed.

## V.   PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED, OR AT A MINIMUM AMENDED, TO COMPLY WITH PREVAILING LAW.

### A.   Because Plaintiffs failed to adequately allege a claim under federal law, the Court should decline to exercise supplemental or pendent jurisdiction.

"Where a district court dismisses a federal claim, leaving only state claims for resolution, it should decline jurisdiction over the state claims and dismiss them without prejudice." *Wade v. Regional Credit Ass'n,* 87 F.3d 1098, 1101 (9th Cir. 1996); *See also* 28 U.S.C. §1367(c)(3) (providing that the district court may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction.)  "[I]t is generally preferable for a district court to remand remaining pendent claims to state court." *Harrell v. 20th Century Ins. Co.*, 934 F.2d 203, 205 (9th Cir. 1991).

In making its determination, the Court is to weigh whether the values of economy, convenience, fairness and comity are best served by the Court's retention of jurisdiction over the state law claims. *Hagans v. Lavine,* 415 U.S. 528, 545 (1974) (courts required to consider the values of "judicial economy, convenience, and fairness to the litigants" as well as comity in determining whether an exercise of discretion would be appropriate)*; Hounsell v. Los Angeles City Atty*., 2015 U.S. Dist. LEXIS 159013, *28 (C.D. Cal. Nov. 23, 2015) *quoting  Anderson v. Countrywide Financial*, No. 2:08-cv-01220-GEB-GGH, 2009 U.S. Dist. LEXIS 100788, 2009 WL 3368444, *6 (E.D. Cal. Oct. 16, 2009) ("'Since state courts have the primary responsibility to develop and apply state law, and the *[United Mine Workers of America v.] Gibbs* values do not favor continued exercise of supplemental jurisdiction over Plaintiff's state claims, Plaintiff's state claims are dismissed under 28 U.S.C. § 1367(c)(3)'"). *See also United Mine*

1   *Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("'Needless decisions of state

2   law should be avoided both as a matter of comity and to promote justice between the

3   parties, by procuring for them a surer-footed reading of applicable law'"). Here, because

4   the state courts have the primary responsibility to decide, develop and apply California

5   law for Plaintiffs' three state law claims, the principles of judicial economy,

6   convenience, fairness to the litigants, and comity balance in favor of the claims being

7   heard in the California Superior Court.

8         **B.**     **Plaintiffs do not allege compliance with the Government Claims Act.**

9                1.     <u>Mr. Zaroda failed to submit a Government Claim.</u>

10         The Government Claims Act provides that absent specific statutory exceptions, an

11   action for money or damages against a public entity may not proceed unless a written

12   claim has first been presented to the governmental entity and the claim either has been

13   granted or rejected. Cal. Gov. Code §§ 905 and 945.4; *State of California v. Superior*

14   *Court*, 32 Cal.4th 1234, 1237 (2004). Compliance with the Government Claims Act is

15   required for all Plaintiffs' state law claims. *See Davis v. Kissenger*, 2014 U.S. Dist. Lexis

16   152807, *5-8 (E.D. Cal. Oct. 28, 2014) (determining that the Government Claims Act

17   applies to Bane Act violation claims); *Inman v. Anderson*, 294 F.Supp.3d 907, 925 (N.D.

18   Cal. Feb. 27, 2018) (same). *Violes v. Reavis*, 2014 U.S. Dist. LEXIS 144139, *10 (S.D.

19   Cal. Sept. 2, 2014), *citing Gatto v. Cnty. of Sonoma*, 98 Cal. App. 4th 744, 761-63

20   (2002) (Unruh claims subject to California Government Code filing requirements when

21   monetary damages are primary purpose of the action). "When a claim for 'money or

22   damages' is not based on a governmental obligation to return specific property, it is

23   subject to the claim requirements." *City of Stockton v. Superior Court (Stockton)*, 42

24   Cal.4th 730, 743 (2007). Indeed, the California Supreme Court in *Stockton* held that an

25   exception to the Government Claims Act only applied to mandamus actions regarding

26   the duty to return seized property, which is not alleged here. *Id.*

27         Failure to allege facts which demonstrate or excuse compliance with the

28   Government Claims Act subjects state law claims to dismissal. *Karim-Panahi v. Los*

1   *Angeles Police Dep't.*, 839 F.2d 621, 627 (9th Cir. 1988). "[T]o satisfy the claims
2   statutes, the class claim must provide the name, address, and other specified information
3   concerning the *representative* plaintiff and then sufficient information to identify and
4   make ascertainable the class itself." *City of San Jose v. Superior Court,* 12 Cal.3d 447,
5   457 (1974) (italics in original).

6         Unlike Ms. Cooley and Mr. Hubert, Mr. Zaroda did not present a Government
7   Claim prior to the present lawsuit being filed. Because no class has yet been certified, it
8   is arguable whether Mr. Zaroda can maintain an individual action at the present time.
9   Indeed, based on the allegations of the Complaint, Mr. Zaroda does not appear to be
10  similarly situated with Ms. Cooley or Mr. Hubert.[13] The Government Claim they
11  presented does not constitute substantial compliance by Mr. Zaroda with the
12  Government Claims Act.

13        2.    <u>Plaintiffs' allegations regarding their compliance with the</u>
14                   <u>Government Claims Act are deficient.</u>

15        Plaintiffs plead that the claims were denied in a letter dated April 13, 2018
16  (Compl. ¶46)*,* which, if true, results in their Complaint being filed more than six months
17  after the claim was denied, and therefore untimely. It appears that this date may be a
18  typographical error which warrants an amendment; however, as pled, all the state law
19  claims are untimely.

---

24      [13] For instance, it is alleged that Mr. Zaroda moved his property to Rose Avenue
25  because he was familiar with the street cleanings and had constructive notice that they
    may occur. Compl. ¶¶23-24. Conversely, Ms. Cooley and Mr. Hubert left their property
26  on 3rd Avenue. Compl. ¶25. Mr. Zaroda contends he lost his transit pass at some
    unknown time which made it impossible to retrieve his belongings from storage. Compl.
27  ¶¶ 28 & 33. There is no allegation that Mr. Hubert could not access the storage facility,
28  or that Mr. Zaroda could not have accessed it if he obtained transportation.

**C.** **Plaintiff's fifth claim for violation of the Unruh Civil Rights Act fails because the City is not a business establishment and there are no allegations of discrimination against Cooley *because of* her disability.**

California's Unruh Civil Rights Act, as set forth in Cal. Civ. Code § 51, prohibits a "business establishment" from discriminating against "persons within the jurisdiction of this state" based upon "their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation." Cal. Civ. Code § 51(a). The Unruh Civil Rights Act "shall not be construed to confer any right or privilege on a person that is conditioned or limited by law or that is applicable alike" to all persons. (§ 51(c).) A plaintiff seeking to establish a cause of action for damages under the Unruh Civil Rights Act must plead and prove intentional discrimination in public accommodations in violation of the terms of the Act, or alternatively, a violation of the ADA. *Mei-Ling v. City of Los Angeles*, 2012 U.S. Dist. LEXIS 199358 (C.D. Cal. April 10, 2012), *citing Munson v. Del Taco, Inc*. 46 Cal.4th 661, 664 (2009). Here, Plaintiffs have not, and cannot, adequately plead or prove that (a) the City is a "business establishment" or (b) that Cooley and "similarly situated class members" were discriminated against on the basis of disability.

### 1. The City is not a "business establishment"

Neither the Department of Public Works, the Los Angeles Police Department, nor the City (the sole named Defendant) was acting, in any way as a "business establishment" vis a vis Plaintiffs. "An organization has sufficient businesslike attributes to qualify as a business establishment when it appears to have been operating in a capacity that is the functional equivalent of a commercial enterprise." *Carter v. City of Los Angeles*, 224 Cal. App. 4th 808, 825 (2014) (a city acts as a public servant, not a commercial enterprise, when it provides sidewalks and curbs to its citizens). Several Courts have determined that the Unruh Civil Rights Act does not apply to government entities because they are not "business establishments." *See Burnett v. San Francisco Police Dep't*, 36 Cal. App. 4th 1177, 1191-92 (1995) (Unruh does not apply to

21

legislative bodies); *Qualified Patients Assn. v. City of Anaheim*, 187 Cal. App. 4th 734, 763-64 (2010) (enacting legislation does not convert a government entity into a "business establishment" for Unruh purposes); *Harrison v. City of Rancho Mirage*, 243 Cal. App. 4th 162, 175-76 (2015) (a city is not a "business establishment" for purposes of Unruh); *Romstad v. Contra Costa Cnty.*, 41 Fed. Appx. 43, 46 (9th Cir. 2002) (holding the district court did not err when it found that the California Department of Social Services is not a "business establishment" for purposes of the act); *Williams v. Cty. of Alameda*, 2018 U.S. Dist. LEXIS 185930, *15-16 (N.D. Cal. Oct. 30, 2018) (collecting cases and finding that various government entities were not "business establishments" for purposes of Unruh because the nature, purpose, and structure of each entity were that of a public servant.)

Similarly, here, there is no allegation that supports that the City is a "business establishment" under Civil Code section 51. Plaintiffs merely contend that on the morning of September 15, 2017, City employees conducted a sidewalk cleaning, while members of the LAPD provided "road closure" support. Plaintiffs' conclusory allegation that "Defendant, through its agents and employees in the LAPD and Department of Public Works, is a 'business establishment' within the meaning of §51" (Compl at ¶ 74) – without any showing that the City was acting in the functional equivalent of any commercial enterprise –are insufficient to support a claim that the Unruh Civil Rights Act was violated by Defendant. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (the Court is "not bound to accept as true a legal conclusion couched as a factual allegation.")

> 2.   <u>Plaintiffs fail to plead that they were discriminated against because of their disability.</u>

Further, there are no facts alleged that support a conclusion that the City engaged in discriminatory actions against Plaintiff Cooley on the basis of her disability. As discussed above, Plaintiffs have not stated a claim that the ADA was violated, and therefore, Plaintiffs' Unruh cause of action lacks merit. *Burgess v. Hous. Auth.*, 2006 U.S. Dist. LEXIS 101454 (N.D. Cal. Dec. 30, 2006) (because the plaintiffs did not

1  establish any violation under the ADA, any Unruh claim premised on an ADA violation

2  failed.)  Plaintiffs also have not alleged any facts that Ms. Cooley was intentionally

3  discriminated against as a result of her disability. Rather, Plaintiffs contend that even

4  though the area to be cleaned was already taped-off, they were accommodated by being

5  allowed to enter to retrieve their items. Compl. at ¶¶ 25-26. Notably absent from the

6  Complaint is any allegation that Ms. Cooley was treated any differently than any other

7  person as a result of her disability. Accordingly, Plaintiffs have not pled a plausible

8  Unruh claim so their fifth cause of action should be dismissed without leave to amend.

9         **D.**      **Plaintiffs' sixth claim for violation of the Bane Act lacks merit.**

10        The Bane Act and related statutes 'are California's response to [the] alarming

11  increase in hate crimes.' … Civil Code section 52.1 provides that a person may bring a

12  cause of action 'in his or her own name and on his or her own behalf' against anyone

13  who 'interferes by threats, intimidation or coercion, with the exercise or enjoyment' of

14  any constitutional or statutory right." [Citation.] *Gabrielle A. v. County of Orange* 10

15  Cal. App. 5th 1268, 1290 (2017). "[T]o state a cause of action under section 52.1 there

16  must first be violence or intimidation by threat of violence." *Id.*

17        "Second, the violence or threatened violence must be due to plaintiff's

18  membership in one of the classifications set forth in Civil Code section 51.7 or a group

19  similarly protected by constitution or statute from hate crimes. [Citations.]" *Id.* The

20  relevant inquiry under the Bane Act "is whether a reasonable person, standing in the

21  shoes of the plaintiff, would have been intimidated by the actions of the defendants and

22  have perceived a threat of violence." *Richardson v. City of Antioch*, 722 F. Supp. 2d

23  1133, 1147 (N.D. Cal. 2010).

24        Plaintiffs claim that unidentified individuals – *not the named Plaintiffs* – tried to

25  move their property within the taped off area on Rose, but were told they would be

26  arrested if they crossed the police tape. Compl. ¶ 27. Plaintiffs do not provide any

27  specific facts, including who allegedly made these comments, and to whom they were

28  directed. Indeed, the Complaint is vague whether any such purported threats were made

by Defendant or anyone connected with the City. Importantly, Ms. Cooley, Mr. Hubert and Mr. Zaroda, allege that they were all able to enter the "taped-off areas" to retrieve certain of their belongings without any threat of violence or arrest. *See e.g.,* Compl at ¶¶ 26 and 28. Thus, by their own admissions, Plaintiffs were not threatened with violence or arrest by the City, and Plaintiffs lack standing to pursuing a Bane Act violation claim. *See e.g. Casey v. Lewis*, 4 F.3d 1516, 1519 (9th Cir. 1993) (at least one named plaintiff must satisfy the actual injury component of standing in order to seek relief on behalf of him/herself or the class); "A representative plaintiff still possesses only a single claim for relief—the plaintiff's own. That the plaintiff has undertaken to also sue 'for the benefit of all' does not mean that the plaintiff has somehow obtained a 'class claim' for relief that can be asserted independent of the plaintiff's own claim." *Schoshinski v. City of Los Angeles*, 9 Cal. App. 5th 780, 792 (2017).

Furthermore, because Plaintiffs have not and cannot plead that any specific Constitutional or statutory right has been violated, Plaintiffs cannot establish an essential element for their Bane Act claim. *See* Compl. ¶ 78. To the extent that Plaintiffs' allegations are sufficient, if any City employee purportedly engaged in any such conduct, he or she did not so in good faith understanding of Constitutionally-valid municipal code provisions (LAMC § 56.11), and the City is therefore immune from liability. *See* Cal. Govt. Code §820.4 and Cal. Govt. Code §815.2(b). The Bane Act does not provide an exception to these statutory immunities. *Towery v. State of California*,14 Cal.App.5th 226, 236 (2017). Plaintiffs have further failed to plead a viable cause of action that Defendant violated California Civil Code Section 2080, *et seq.*

California Civil Code Section 2080 provides, in relevant part:

Any person or any public or private entity that finds and takes possession of any money, goods, things in action, or other personal property,… shall, within a reasonable time, inform the owner, if known, and make restitution without compensation, except a reasonable charge for saving and taking care of the property.

In the event the owner is unknown, and the value of the property is $100 or more, the property is to be turned over to the police or sheriff's department. Cal. Civ. Code §

24

2080.1  The police or sheriff's department is to restore the property to the owner if the owner (a) appears within 90 days of the police/sheriff receiving the property, (b) proves ownership, and (c) pays all reasonable charges. Cal. Civ. Code § 2080.2.

Here, Plaintiffs fail to allege facts sufficient to state a claim that the City violated any mandatory duty to maintain the property for 90 days. Among other things, it is unclear whether (a) the City took possession of any property, (b) any property taken was valued at $100 or more, (c) any named Plaintiff attempted to retrieve their property out of storage within 90 days, or (d) the City failed to store the property for 90 days. Indeed, Plaintiffs' Complaint suggests that no inquiries were made about whether the named Plaintiffs' property was retrieved and stored, nor that any attempts were made by Ms. Cooley, Mr. Hubert or Mr. Zaroda to obtain any stored property. Compl. ¶ 33. Thus, as above, Plaintiffs lack standing to pursue their claims. Moreover, at least one Court has determined that the absence of such allegations warranted granting a motion to dismiss without leave to amend a California Civil Code section 2080 claim. "More critical to this motion is the lack of any authority suggesting the Individual Defendants, none of whom actually collected any of the property in question, can nevertheless be liable under § 2080. *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1121 (E.D. Cal. 2012) (the Court granted the defendants' motion to dismiss without leave to amend.)

## VI.   CONCLUSION

For the reasons stated above, Defendant respectfully requests that the Court grant Defendant's Motion to Dismiss Plaintiffs' Complaint.

Dated: March 4, 2019                    Respectfully submitted,

                                        /s/
                                        ARLENE H. HOANG
                                        Deputy City Attorney
                                        Attorneys for Defendant
                                        City of Los Angeles