**CAROL A. SOBEL** SBN 84483
**MONIQUE A. ALARCON** SBN 311650
**LAW OFFICE OF CAROL A. SOBEL**
725 Arizona Avenue, Suite 300
Santa Monica, CA 9040
t. 310.393.3055
e. carolsobel@aol.com
e. monique.alarcon8@gmail.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA COOLEY, BENJAMIN HUBERT, and CASIMIR ZARODA, individually and on behalf of a class of similarly situated persons,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>The CITY OF LOS ANGELES, a municipal entity; DOES 1-10,<br>　　　　　Defendants. | Case No.: 2:18-cv-09053-CAS-PLA<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF LOS ANGELES'S MOTION TO DISMISS THE COMPLAINT**<br><br>Date: April 29, 2019<br>Time: 10:00 AM<br>Ctrm: First Street Courthouse, 8D<br>Hon. Christina A. Snyder |

**TO THIS HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

Plaintiffs respectfully submit the following Opposition to Defendant City of Los Angeles's Motion to Dismiss Plaintiffs' Complaint.  This opposition is based upon the attached Memorandum of Points and Authorities and Exhibit 1.

I.          INTRODUCTION ...............................................................................1

II.         LEGAL STANDARD .......................................................................1

III.        ARGUMENT......................................................................................2

    A.      The Complaint Provides Sufficient Notice of the Claims....................2

        1.  Defendant's affirmative defense does not support dismissal ................2

        2.  Pleading in the Alternative is Allowed Under F.R.Civ.P Rule 8.........4

    B.      Plaintiffs State A Claim For Municipal Liability ...................................4

        1.  Plaintiffs allege violations of their Fourth Amendment rights..............5

        2.  Plaintiffs sufficiently allege a Fourteenth Amendment Claim..............5

        3.  Plaintiffs adequately allege a Fifth Amendment Violation ...................6

    C.      Plaintiffs State A Violation of the Americans With Disabilities Act.....9

        1.  The removal and storage of personal property by a municipal actor is a
            service, benefit, or activity..................................................................10

        2.  The storage facility is a barrier that denies Equal Access as Disabled
            Persons ..................................................................................................11

        3.  The ADA does not require a person with a disability to engage in futile
            gestures ..................................................................................................12

        4.  Plaintiffs are entitled to monetary damages under the ADA ..............13

    D.      Plaintiffs' State Law Claims Are Properly Before This Court and In
            Compliance With The Government Claims Act .................................14

        1.  Pendant jurisdiction is proper..............................................................14

        2.  Plaintiffs Cooley and Hubert submitted a class claim on behalf of all
            purported class members, including Mr. Zaroda...................................15

        3.  Plaintiffs exhausted all administrative remedies ...............................15

ii
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

E.    Plaintiffs Alleged A Claim for Relief Under Unruh ...........................16

F.    Plaintiffs Alleged A Claim For Relief Under The Bane Act ...............18

G.    Defendant's Conduct is Not Immunized by California Statutes ..........19

H.    Plaintiffs Adequately State A Claim Under Cal. Civ. Code § 2080 ....19

IV.        CONCLUSION ....................................................................................20

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Federal Cases**

*Alexander v. Choate*,
    469 U.S. 287 (1985) ........................................................................ 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................... 2, 9

*Barden v. City of Sacramento*,
    292 F.3d 1073 (9th Cir. 2002) ................................................... 12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................... 2

*Black v. Ritz-Carlton Hotel Co.*,
    977 F. Supp. 2d 996 (C.D. Cal. 2013) ..................................... 2, 3

*Bragdon v. Abbott*,
    524 U.S. 624 (1998) ..................................................................... 11

*Branch v. Tunnell*,
    14 F.3d 449 (9th Cir. 1994) ........................................................ 16

*Chew v. Gates*,
    27 F.3d 1432 (9th Cir. 1994) ........................................................ 9

*Coral Construction Co. v. King County*,
    941 F.2d 910 (9th Cir. 1991) ........................................................ 8

*Daskalea v. District of Columbia*,
    227 F.3d 433 (D.C. Cir. 2000) ..................................................... 9

*Destfino v. Reiswig*,
    630 F.3d 952 (9th Cir. 2011) ................................................. 14, 15

*Doe v. U.S. (In re* Doe*)*,
    58 F.3d 494 (9th Cir. 1995) .......................................................... 2

*Exec. Software N. Am. v. U.S. Dist. Court*,
    24 F.3d 1545 (9th Cir. 1994) ...................................................... 14

*Gerritsen v. Warner Bros. Entm't*,
    116 F. Supp. 3d 1104 (C.D. Cal. 2015) ..................................... 16

iv
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

*Gonzales v. County of Merced*,
   289 F. Supp. 3d 1094, (E.D. Cal. 2017) ............................................. 8

*Gorman v. Bartch*,
   152 F.3d 907 (8th Cir. 1998) ................................................................ 10

*Harrell v. 20th Century Ins. Co.*,
   934 F.2d 203 (9th Cir. 1991) ............................................................... 14

*Haw. Hous. Auth. v. Midkiff*,
   467 U.S. 229 (1984) ............................................................................... 7

*Hearns v. Gonzales*,
   No. 1:14-cv-01177-DAD (PC), 2016 WL 110437, at *1 (E.D. Cal. Jan. 11,
   2016) .................................................................................................... 18

*Hudson v. Palmer*,
   468 U.S. 517 (1984) ............................................................................... 6

*Hunter v. County of Sacramento*,
   652 F.3d 1225 (9th Cir. 2011) ............................................................... 9

*Ileto v. Glock Inc.*,
   349 F.3d 1191 (9th Cir. 2003) ............................................................... 1

*Jackson v. Gates*,
   975 F.2d 648 (9th Cir. 1992) ................................................................. 9

*Lavan v. City of L.A.*,
   693 F.3d 1022 (9th Cir. 2012) ......................................... 1, 3, 6, 13

*Lavan v. City of L.A.*,
   797 F. Supp. 2d 1005 (C.D. Cal. 2011) ............................................. 20

*Lee v. City of L.A.*,
   250 F.3d 668 (9th Cir. 2001) ................................................................. 5

*Lucas v. S.C. Coastal Council*,
   505 U.S. 1003 (1992) ............................................................................. 7

*Monell v. Dep't of Soc. Servs.*,
   436 U.S. 658 (1978) ............................................................................... 4

*Monroe v. Pape*,
   365 U.S. 167 (1961) ............................................................................... 7

v
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

*N.M. State Inv. Council v. Ernst & Young L.L.P.*,
   641 F.3d 1089 (9th Cir. 2011) ........................................................... 1

*Pa. Dep't of Corrs. v. Yeskey*,
   524 U.S. 206 (1998) ....................................................................... 10

*Park v. Thompson*,
   851 F.3d 910 (9th Cir. 2017) .......................................................... 2, 3

*Patsy v. Bd. of Regents*,
   457 U.S. 496 (1982) ....................................................................... 7-8

*PGA Tour, Inc. v. Martin*,
   532 U.S. 661 (2001) ....................................................................... 12

*Pickern v. Holiday Quality Foods*,
   293 F.3d 1133 (9th Cir. 2002) ......................................................... 12

*Pottinger v. City of Miami*,
   810 F. Supp. 1551 (S.D. Fla. 1992) ................................................... 7

*Price v. Sery*,
   513 F.3d 962 (9th Cir. 2008) ............................................................ 9

*Pruitt v. Cheney*,
   963 F.2d 1160 (9th Cir. 1992) ......................................................... 4

*Recchia v. City of L.A. Dep't of Animal Servs.*,
   889 F.3d 553 (9th Cir. 2018) .......................................................... 3, 5

*Rodriguez v.*
   Cty. of L.A., 891 F.3d 776 (9th Cir. 2018) ...................................... 19

*Sanchez v. City of Fresno*,
   914 F. Supp. 2d 1079 (E.D. Cal. 2012) ............................................. 6

*Smith v. Daily Mail Pub. Co.*,
   443 U.S. 97 (1979) ......................................................................... 19

*Smith v. United States*,
   508 U.S. 223 (1993) ....................................................................... 10

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ..................................................... 1, 3, 4

vi

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

*Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*,
   535 U.S. 302 (2002) ................................................................. 6

*Trevino v. Gates*,
   99 F.3d 911 (9th Cir. 1996) ................................................... 8

*United States v. Jimenez*,
   41 F. App'x 1 (7th Cir. 2002) ............................................... 17

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ........................................... 1, 16

*Updike v. Multnomah County*,
   870 F.3d 939 (9th Cir. 2017) ............................................... 13

*Weinreich v. L.A. County Metro. Transp. Auth.*,
   114 F.3d 976 (9th Cir. 1997) ............................................... 12

*Williams v. Cty. of Alameda*,
   2018 U.S. Dist. LEXIS 185930 (N.D. Cal. Oct. 302018) (N.D. Cal. Oct. 30,
   2018) ....................................................................................... 17

*Zimmerman v. City of Oakland*,
   255 F.3d 734 (9th Cir. 2001) ................................................. 6

*Zinermon v. Burch*,
   455 U.S. 422 (1990) ......................................................... 6-7

**Federal Statutes**

28 U.S.C. § 1367 (2012) ........................................................... 14

29 U.S.C. § 504 ................................................................... 11,13

29 U.S.C. § 701 ........................................................................ 13

29 U.S.C. § 794 (2012) ............................................................. 11

42 U.S.C §§ 1981a, 2000e-5(f)-(k) ......................................... 13

42 U.S.C. § 12132 ..................................................................... 10

**State Cases**

*Burnett v. S.F. Police Dep't*,
   36 Cal. App. 4th 1177 (1995) ............................................... 17

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

*Californians for Disability Rights v. Mervyn's LLC*,
    165 Cal. App. 4th 571 (2008) ................................................................ 18

*Carter v. City of L.A.*,
    224 Cal. App. 4th 808 (2014) ................................................................ 17

*City of San Jose v. Superior Court*,
    12 Cal. 3d 447 (1974) ............................................................................ 15

*Harrison v. City of Rancho Mirage*,
    243 Cal. App. 4th 162 (2015) ................................................................ 17

*Isbister v. Boys' Club of Santa Cruz*,
    40 Cal. 3d 72 (1985) .............................................................................. 16

*Landgate, Inc. v. Cal. Coastal Com.*,
    17 Cal. 4th 1006 (1998) .......................................................................... 7

*Qualified Patients Ass'n v. City of Anaheim*,
    187 Cal. App. 4th 734 (2010) ................................................................ 17

*Towery v. State*,
    14 Cal. App. 5th 226 (2017) .................................................................. 19

*Venegas v. Cty. of L.A.*,
    32 Cal. 4th 820 (2004) ........................................................................... 18

*Whitworth v. City of Sonoma*,
    No. A103342, 2004 WL 2106606 (Cal. Ct. App. Sept. 22, 2004) ................... 19

**State Statutes**

Cal. Civ. Code § 51 ...................................................................................... 18

Cal. Civ. Code § 52.1 ................................................................................... 18

Cal. Civ. Code § 2080 .................................................................................. 19

Cal. Govt. Code § 815.2 ............................................................................... 19

Cal. Govt. Code § 820.4 ............................................................................... 19

Cal. Govt. Section 844.6 .............................................................................. 19

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................... *passim*

Fed. R. Civ. P. 8 ............................................................................................. 4

**Other**

28 C.F.R. § 25.201 (2016) ...................................................... 11

28 C.F.R. § 35.190 (1995) ...................................................... 11

56 Fed. Reg. 35,694 .............................................................. 11

*Wright and Miller, Fed. Prac. and Proc., Civil 3d*
    § 1357 .............................................................................. 4

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

Defendant City's Motion to Dismiss ("MTD") necessarily involves disputed issues of fact.  The City contends it did nothing wrong; so, Plaintiffs have not and cannot state any claim for relief.  MTD 11-12. These arguments are not new.  Plaintiffs, homeless persons in the Venice area of Los Angeles, allege that employees of the City seized and destroyed their property, without adequate notice, on September 15, 2017.   In *Lavan v. City of L.A.*, 693 F.3d 1022 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 2855 (2013), a preliminary injunction was affirmed against seizing and destroying the property of homeless individuals without due process.  Compl. ¶ 3.  In *Mitchell v. City of Los Angeles*, No. 16-CV- 01750 SJO (GJSx), Dkt. No. 51, (C.D. Cal. Apr. 13, 2016), the City was again enjoined from similar conduct.  *Id*. at ¶ 3.  These are but two actions against the City adjudicating the same unlawful acts and that require the motion be dismissed.  *Id*. at ¶ 38.

## II.  LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 12(b)(6), the Court may only consider the complaint, any documents incorporated by reference in the complaint, and matters properly subject to judicial notice.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Rule 12(b)(6) must be read in conjunction with Rule 8(a).  *See Ileto v. Glock Inc.*, 349 F.3d 1191, 1199-200 (9th Cir. 2003).  Rule 12(b)(6) tests only whether Plaintiffs stated a claim, not whether they will ultimately prevail.  *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011).  The allegations must give "fair notice … to enable [the City] to defend itself effectively."  *Id.* at 1216 (edit supplied).  To this end, a complaint need only set out "a short and plain statement of the claim showing that the pleader is entitled to relief."  F.R.Civ.P 8(a)(2).

The factual allegations in the complaint must be accepted as true and construed in the light most favorable to the plaintiff.  *N.M. State Inv. Council v. Ernst & Young L.L.P., 64*1 F.3d 1089, 1094 (9th Cir. 2011).  All reasonable

1

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

inferences from material allegations must be drawn in favor of Plaintiffs.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  *See also Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017).  If sufficient facts are alleged "to raise a right to relief above the speculative level," the complaint may not be dismissed.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  If the motion is granted, leave to amend should be given "unless it [appears] that the pleading could not possibly be cured by … other facts." *Doe v. U.S.* (*In re Doe*), 58 F.3d 494, 497 (9th Cir. 1995) (edits supplied, citations omitted).

## III.   ARGUMENT

### A.   The Complaint Provides Sufficient Notice of the Claims

#### 1.   Defendant's affirmative defense does not support dismissal

The City contends that it cannot ascertain the claims advanced in the Complaint.  At the same time, it understands these claims well enough to assert Los Angeles Municipal Code § 56.11 as an affirmative defense.  MTD 12:19-20. ("If procedural protections are followed, no Fourth or Fourteenth Amendment claim arises.").  The City's argument is not a failure to plead pursuant to Rule 8(a) but, rather, that Plaintiffs fail on the merits since the adoption of LAMC § 56.11, *ipso facto*, legitimizes the City's actions.  *Id.*

"A motion to dismiss under Rule 12(b)(6) cannot be granted based upon an affirmative defense unless that 'defense raises no disputed issues of fact.'" *Black v. Ritz-Carlton Hotel Co.*, 977 F. Supp. 2d 996, 1010 (C.D. Cal. 2013) (C.D. CA. 2013), citing *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984).  Defendant could overcome this rule "if the allegations in a complaint are contradicted by matters properly subject to judicial notice." *Black*, 977 F. Supp. 2d at 1010, citing *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  There are no such matters here.  Defendant could also succeed at this stage based on an affirmative defense if "the complaint's allegations, with all inferences drawn in Plaintiff's favor, nonetheless show that the affirmative defense 'is apparent on the

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

face of the complaint.'" *Id.*, citing *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010). That, too, is not the case here.

Ruling on Defendant's affirmative defense of LAMC § 56.11 necessarily requires the Court to weigh factual disputes and determine, without full briefing, that LAMC § 56.11 is both constitutional on its face and as applied. No ordinance is entitled to such an absolute and uncontested presumption of constitutional legitimacy. When the government acts pursuant to a local ordinance or statute, it may still violate the Constitution, and that is precisely what is alleged here. "[T]he decision to impound pursuant to the authority of a city ordinance … does not, in and of itself, determine the reasonableness of the seizure under the Fourth Amendment …" *Lavan*, 693 F.3d at 1030 (internal citation omitted); *Id.* at 1032. Moreover, the decision to destroy the property raises separate and equally, if not more, compelling concerns under the Fourth Amendment. *Id.* at 1030-31.

"The seizure of a homeless person's property implicates important Fourth Amendment concerns." *Recchia v. City of L.A. Dep't of Animal Servs.*, 889 F.3d 553, 558 (9th Cir. 2018). Even if LAMC § 56.11 could possibly be determinative here – and Plaintiffs firmly believe it is not - the amended ordinance must still be tested against the principle that "[t]he Fourth Amendment protects a person's right not to have their property unreasonably seized by the government. *United States v. Place,* 462 U.S. 696, 700, (1983)." *Id.*

Any action by the City, including implementation of LAMC § 56.11, must comply with the Ninth Circuit holding that "[h]omeless people living on the street enjoy the protection of the Fourth Amendment." *Recchia,* 889 F.3d at 558, citing *Lavan*, 693 F.3d at 1029. To hold otherwise at this stage would improperly and prematurely tip the scale in Defendant's favor. *Soo Park*, 851 F.3d at 928; *Starr*, 652 F.3d at 1216 (motion to dismiss must be denied "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible.) *Starr*, 652 F.3d at 1216.

### 2.  Pleading in the Alternative is Allowed Under F.R.Civ.P Rule 8

The City contends the motion must be granted because it cannot tell if Plaintiffs' alleged wrongdoing stemmed from action or inaction, was intentional or negligent, or by participation, direction, or ratification.  MTD 13.  This argument fails even if differing bases for liability are asserted.  "The Federal Rules permit a party to plead their claims in the alternative."  *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").  "If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."  *Id.  . See also Pruitt v. Cheney*, 963 F.2d 1160, 1164 (9th Cir. 1992) (motion to dismiss must be denied "if the allegations provide for relief on any possible theory"); Wright and Miller, Fed. Prac. and Proc., Civil 3d § 1357 (motion to dismiss must be denied if "the allegations provide any possible legal theory").

Nonetheless, Plaintiffs expressly allege that the City, through its employees and agents, acting in concert, unlawfully seized and destroyed their property, Compl. ¶¶ 16-17, 48, 53, 58-59, and did so intentionally and pursuant to City policy, custom, and practice.  *Id.* at ¶ 35, 49-50, 54-55, 59.  The date, location, and City acts in this incident are alleged.  *Id.* ¶ 19, 26-29.  The Complaint provides fair notice of the bases of Plaintiffs' claims, so the motion to dismiss should be denied on this ground.

### B.    Plaintiffs State A Claim For Municipal Liability

The City contends that Plaintiffs fail to state a claim for municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), because Plaintiffs cannot prove a constitutional violation or a policy, practice, or custom.   MTD 7-8.  Plaintiffs can readily show unconstitutional action in the form of official policy or custom that caused their injuries.  *Monell*, 436 U.S. at 690-91.  They allege that: (1) they were deprived of their constitutional rights by defendants acting under color of law; (2) that defendants have customs or policies that are deliberately indifferent to their constitutional rights; and (3) that these practices are the moving force behind

the constitutional violation.  *Lee v. City of L.A.*, 250 F.3d 668, 681-82 (9th Cir. 2001).

### 1.  Plaintiffs allege violations of their Fourth Amendment rights

Plaintiffs meet the first element of *Monell*. They allege violations of their Fourth Amendment rights by the City and its agents and employees, who seized and summarily destroyed Plaintiffs' property without a warrant or probable cause.  Time and again, the Courts have affirmed that "[t]he seizure of a homeless person's property implicates important Fourth Amendment concerns." *Recchia*, 889 F.3d at 558.  "The Fourth Amendment protects a person's right not to have their property unreasonably seized by the government." *Id.* (citing *U.S. v. Place*, 462 U.S. at 700. "Homeless people living on the street enjoy the protection of the Fourth Amendment." *Lavan,* 693 F.3d at 1029. Compl. ¶¶ 28, 29, 30-31, 48.  Plaintiffs further allege these acts were "and done with the specific intent to deprive [them] of their constitutional right to be secure in their property." *Id.* at ¶ 49.

The City argues that Plaintiffs allege *Monell* liability based on a violation of the *Lavan* injunction. MTD 12. Plaintiffs make no such argument.  They detail past actions, including *Lavan*, enjoining the same issues to show a present unlawful custom and practice. *See* Compl. ¶ 38.  Past events may evince current widespread practice that, even if not a formal policy, is so engrained as to establish a custom with the force of law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Evidence of similar past events may also show that "a municipality's actual policies were different from the ones that had been announced." *Id.* at 131.

### 2.  Plaintiffs sufficiently allege a Fourteenth Amendment Claim

Plaintiffs also sufficiently allege their Fourteenth Amendment due process rights were violated when the seizure and destruction of their property occurred without adequate pre or post-deprivation notice. Compl. ¶ 58. "Because homeless persons' unabandoned possessions are "property" within the meaning of the Fourteenth Amendment, the City must comport with the requirements of the

Fourteenth Amendment's due process clause if it wishes to take and destroy them." *Lavan*, 693 F.3d at 1032, *citing United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993) ("Our precedents establish the general rule that individuals must receive notice and an opportunity to be heard before the Government deprives them of property.") Plaintiffs allege facts to support this claim. Compl. ¶¶ 20-21, 26-29.  Defendant disputes those facts and contends pre-deprivation notice was given.  At a minimum, the sufficiency of "notice" is a material disputed fact.

### 3.  Plaintiffs adequately allege a Fifth Amendment Violation

Plaintiffs assert a Fifth Amendment "takings" claim for seizure of their property without just compensation.  Compl. ¶ 53.  Defendant argues this claim fails because: (1) there was no public taking; and (2) the claim is not ripe since Plaintiffs did not seek a state remedy before filing suit.  MTD 15.  Both arguments fail.

The takings clause applies to two types of actions: (a) the taking of physical possession of property or of an interest in that property for a public use; and (b) the regulatory prohibition of a private use.  *See Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 321–23 (2002).  "The first type of taking occurs through the physical appropriation of property."  *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1105 (E.D. Cal. 2012).

Both the United States Supreme Court and the Ninth Circuit have distinguished between random, unauthorized acts that result in "takings" and the loss of property as a result of a policy.  In *Hudson v. Palmer*, 468 U.S. 517 (1984), the high Court discussed authorized deprivations of property made pursuant to a City's policies or practices and "unauthorized intentional deprivation of property by a state employee."  *Id.* at 533.  In the latter circumstance, state law remedies are sufficient because the state cannot "anticipate and control" unauthorized conduct, so a pre-deprivation process would be impractical, if not impossible, to provide.  *Id.* . *Hudson* is "restricted to [acts that are] random, unpredictable, and unauthorized ways."  *Zimmerman v. City of Oakland*, 255 F.3d 734, 739 (9th Cir. 2001); *see also*

1  *Zinermon v. Burch*, 455 U.S. 422 (1990) (allowing due process claim to go forward

2  when the deprivation alleged would "occur, if at all, at a specific predictable point

3  in the process" and so additional due process could have prevented the deprivation).

4         In *Pottinger v. City of Miami,* the district Court rejected the identical

5  argument Defendant now makes that there could be no Fifth Amendment violation

6  because there was no "public use" for seized homeless persons' property. 810 F.

7  Supp. 1551, 1570 (S.D. Fla. 1992). The *Pottinger* Court relied on the deliberately

8  broad definition of "public use" by the United States Supreme Court in *Haw. Hous.*

9  *Auth. v. Midkiff*, 467 U.S. 229, 240 (1984). *Midkiff* held that "[t]he 'public use'

10 requirement is thus coterminous with the scope of a sovereign's police powers" and

11 that the proper test is whether "exercise of the eminent domain power is rationally

12 related to a conceivable public purpose." *Id.* at 240-41. "[I]t is only the taking's

13 purpose, and not its mechanics, that must pass scrutiny under the Public Use

14 Clause." *Id.* at 244. When the City takes property of homeless individuals, "public

15 use" is assumed as the taking is outside the "scope of a sovereign's police power."

16        As to Defendant's second argument, there is no ripeness issue based on the

17 purported failure to seek state remedies. Here, the taking is physical as opposed to

18 a regulatory taking. "In general (at least with regard to permanent invasions), no

19 matter how minute the intrusion, and no matter how weighty the public purpose

20 behind it, we have required compensation." *Lucas v. S.C. Coastal Council*, 505 U.S.

21 1003, 1015 (1992); *Landgate, Inc. v. Cal. Coastal Com.*, 17 Cal. 4th 1006, 1017

22 (1998).

23        Against this authority from both the federal and state high Courts, Defendant

24 contends that state exhaustion requirements may impose procedural hurdles

25 Plaintiffs must jump over to bring their federal constitutional claims. MTD 13-14.

26 Time and again, the Supreme Court has rejected this argument. Monroe v. Pape,

27 365 U.S. 167 (1961) (overrulled on other grounds) and *Patsy v. Bd. of Regents*, 457

28

U.S. 496 (1982).  Even so, Plaintiffs did seek a state remedy in compliance with Cal. Govt. Code ti§ 910.  *See* Compl. ¶ 46.[1]  Defendant denied the claim.

### 4. Plaintiffs sufficiently allege a *Monell* "policy" or "custom"

The City argues that the Complaint is devoid of any factual allegations to support a *Monell* claim.  MTD 9.  At the same time, the City asserts it acted pursuant to policy, writing that "[a]ll City employees and contractors were operating under [LAMC § 56.11] …." MTD 2.  Based on the City's own assertions and multiple facts in the Complaint, a *Monell* claim is properly alleged.  Compl. ¶¶ 51, 56, 60.

Assuming for the sake of argument that Defendant did act pursuant to § 56.11, a municipal ordinance is a policy for *Monell* purposes.  "Actions taken pursuant to a municipal ordinance are made 'under color of state law' sufficient to trigger potential liability." *Coral Construction Co. v. King County,* 941 F.2d 910, 926 (9th Cir. 1991), citing *Monell*. 436 U.S. at 690.  *Monell* liability may be based on the ordinance itself as a policy, or how it was implemented in practice or as a custom.

"Normally, the question of whether a policy or custom exists would be a jury question." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).  A jury would be able to consider facts regarding similar incidents to decide whether the municipality acted pursuant to a "custom." *See Gonzales v. County of Merced*, 289 F. Supp. 3d 1094, 1099-1101 (E.D. Cal. 2017) (*Monell* claim supported by alleged instances of prior similar misconduct to the incident in question); *see also Starr*, 652 F.3d at 1209-12 (same).  Based, in part, on prior actions against the City on these same issues, Plaintiffs properly allege long-standing practice and custom in the City,

---

[1] Defendants also cite Gov. Code § 910 (f) to assert that Plaintiffs' Fifth Amendment claim fails because they did not list the value of their property, however, § 910 also states that "if the amount claimed exceeds ten thousand dollars ($10,000), no dollar amount shall be included in the claim." At most, this might limit damages recoveries for a state law claim, but not a federal constitutional claim.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

despite a newly written policy.  *See* Compl. ¶ . ¶¶ 3-5, 20, 34-38.  This is particularly strong proof of a practice or custom given the outcome of these past cases.[2]

The City seeks to counter these allegations by requesting judicial notice of LAMC § 56.11. MTD 11; Def. Req. for Judicial Notice (RJN), Ex. A. Even if LAMC § 56.11 could be considered on a 12(b)(6) motion – and Plaintiffs assert it cannot -- , a policy "need only cause [the] constitutional violation; it need not be unconstitutional per se." *Jackson v. Gates*, 975 F.2d 648, 654 (9th Cir. 1992).  It is enough that a "City policy 'causes' an injury where it is 'the moving force' behind the constitutional violation, or where 'the city itself is the wrongdoer.'"  *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994) (internal citations omitted). *See also Hunter v. County of Sacramento*, 652 F.3d 1225, 1335-36 (9th Cir. 2011) (jury instruction that numerous instances of excessive force could show "practice or custom," even where a formal written policy barred excessive force);  *Price v. Sery*, 513 F.3d 962, 972 (9th Cir. 2008) (disputed fact as to long-standing custom or practice, even though written policy was not facially unconstitutional); *Daskalea v. District of Columbia*, 227 F.3d 433, 442-43 (D.C. Cir. 2000) (written policy could not insulate from liability where the guards' actions were different).

Plaintiffs adequately allege *Monell* liability.  Accordingly, the City's Motion to Dismiss for failure to state a *Monell* claim should be denied.[3]

**C.    Plaintiffs State A Violation of the Americans With Disabilities Act**

Defendant's motion interjects questions as to whether Plaintiffs' relative poverty and/or disability is the ultimate cause of Plaintiffs' inability to retrieve property and later access the remote storage facility. MTD 16.  Such questions, if proper at all, raise material factual disputes.  *Iqbal*, 556 U.S. at 678.

---

[2]  Defendant also contends that Plaintiffs' allegations about notices posted in the past means a *Monell* violation cannot be established.  MTD 10-11.  Plaintiffs allege that the actions on September 17, 2017 were a recurrence of past practices and failed to provide sufficient notice or opportunity to retrieve property, as in *Lavan* and *Mitchell*.

[3]  The Complaint alleges several bases for *Monell* liability, only two addressed here.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiffs allege that Defendant took and destroyed disabled Plaintiffs' property -- some of which Plaintiffs could not move because of their disabilities when LAPD told them they could only make one trip -- and subsequently relocated Plaintiffs' property at a remote site, which Plaintiffs could not reasonably access. Compl. ¶¶ 19-33.  These facts are plausible and, thus, the underlying ADA (42 U.S.C. § 12132) claims are sufficient at this stage to survive a motion to dismiss.

### 1.   The removal and storage of personal property by a municipal actor is a service, benefit, or activity

The City asserts that Plaintiff's claim fails because Plaintiff has not identified "any City program, service, or policy to which Ms. Cooley was excluded."  MTD 14.  By its plain language, Title II of the ADA, applies to all public entities, including sanitation and law enforcement agencies.  *Pa. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 210 (1998); *Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998) (applying Yeskey to hold a police department was a "public entity" under the ADA).

Plain language[4] and legislative history confirm that Congress intended Title II of the ADA to apply broadly to municipal activities and specifically to law enforcement activities.  The House Report on Title II stated it "extend[s] . . . to *all* actions of state and local governments."  H.R. Rep. No. 101–485, pt. 2, at 84 (1990) (emphasis added), explicitly identifying  municipal law enforcement activities as an issue where "discriminatory treatment based on disability can be avoided by proper training." 136 Cong. Rec. H11, 461 (1990) (noting Cong. Levine's statements that

---

[4]    A word in a statute must be given its "ordinary or natural meaning."  *Smith v. United States*, 508 U.S. 223, 228 (1993).  "Activity" is defined as "the quality or condition of being an agent or of performing an action or operation."  *Activity*, OXFORD ENGLISH DICTIONARY (3d. ed. 2010).  *Webster's Third New International Dictionary* defines "program" as "a plan of procedure: a schedule or system under which an action may be taken towards a desired goal."  *Program*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (3d. ed. 1986).   Thus, the phrase "services, programs, or activities" covers everything a municipal government does which includes everything a law enforcement and sanitation agency does.

the ADA should be applied to combat police discrimination); H.R. Rep. No. 485, pt. 2, at 84. (1990) (Title II applies to issues regarding communications between the state and local agencies, including the police).

Section 504 of the Rehabilitation Act of 1973, which served as the model for Title II of the ADA, defined "program or activity" as "all of the operations of--" a covered entity.  29 U.S.C. § 794(b) (2012).  Congress further directed that Title II should not "be construed to apply a lesser standard than the standards applied under" *Id.* § 504 (2012).  *Id. See Bragdon v. Abbott*, 524 U.S. 624, 631–32 (1998).

Finally, the Department of Justice (DOJ) interprets Title II to apply to "anything a public entity does."  28 C.F.R. § 25.201 (2016).  Specifically, it applies to "[a]ll programs, services, and regulatory activities relating to law enforcement." 28 C.F.R. § 35.190(b)(6) (1995).  "The general regulatory obligation to modify policies, practices, or procedures requires law enforcement to make changes in policies that result in discriminatory arrests or abuse of individuals with disabilities." 56 Fed. Reg. 35,694.

Here, Plaintiffs plausibly allege the City was performing an act covered by Title II, Plaintiff Cooley and those similarly situated are disabled, and City employees only allowed limited opportunity to remove property—much of which was used to manage, accommodate, or relieve a disability—the remainder of which was destroyed or stored by Defendant in a way that created a hardship because of Plaintiffs disability.  Compl. ¶¶ 19, 25, 26, 30, 33, 64-69.

## 2. The storage facility is a barrier that denies Equal Access as Disabled Persons

Whether a remote storage facility is a barrier under the ADA is not an issue of first impression for the Central District.  In *Schuler v. County of Orange*, a disabled homeless Plaintiff sought a TRO to prevent, *inter alia*, the County of Orange from violating the ADA by taking homeless persons property and storing it in "[a] storage facility located more than twenty miles from the area where Plaintiffs reside." SA CV 17-0259-DOC (KESx), Dkt. No. 21 at *3 (C.D. Cal Feb. 24, 2017).

11
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The Order granting relief reasoned that the use a distant location for storage "for items cleared from the Project Area … is so remote as to be essentially inaccessible for homeless persons living in the Riverbed, especially those with disabilities." *Id.* at *7-8. The Ninth Circuit has also found an obligation to make municipal services and activities accessible under Title II of the ADA. *See Barden v. City of Sacramento*, 292 F.3d 1073, 1077 (9th Cir. 2002); *Huson v. Med. Bd.¸279 F.3d* 1167, 1172 (9th Cir. 2002) (public sidewalks are "services" under Title II).

### 3. The ADA does not require a person with a disability to engage in futile gestures

Plaintiffs alleged that it was impracticable, if not impossible, for them to get from Venice to the storage facility near Union Station in downtown Los Angeles. Whether Plaintiffs sufficiently attempted to access the storage facility is a dispute of fact. On a motion to dismiss, Plaintiffs' factual allegations are taken as true.

On the law, Defendant seems to assert a "try it first" standard, requiring Plaintiffs to risk physical injury, pain, and suffering before bringing an ADA claim before this Court. There is no such prerequisite in the law. The focus of the ADA is discrimination. *See PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674–75 (2001) ; *Alexander v. Choate*, 469 U.S. 287, 295 (1985) ("we can no longer tolerate the invisibility of the handicapped in America" (quoting 118 Cong. Rec. 525–26 (1972))). To avoid unreasonable burdens on individuals with disabilities, the ADA explicitly rejects requiring "a person with a disability to engage in a futile gesture." *Pickern v. Holiday Quality Foods*, 293 F.3d 1133, 1136 (9th Cir. 2002) (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 366 (1977)) (ongoing accessibility problems at a store were sufficient to show both imminent future injury and actual and present injury). To require Plaintiffs to travel more than 20 miles to see if any of their property was retained would likely be futile since Defendants destroyed property as Plaintiffs watched. Defendant's reliance on *Weinreich v. L.A. County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997), is immaterial since, rich

or poor, Plaintiffs could not physically lift or move their essential property on their own and thus, are prevented from accessing it.

### 4.     Plaintiffs are entitled to monetary damages under the ADA

The argument that Plaintiffs are not entitled to money damages under the ADA because they cannot show impermissible intent is similarly without merit. Title II of the Americans with Disabilities Act (ADA) authorizes the recovery of damages.  Specifically, Title II adopts the rights and remedies of 29 U.S.C. § 504 of the Rehabilitation Act, 29 U.S.C. § 701, and any remedies available pursuant to Section 504, are also available pursuant to Title II of the ADA. 29 U.S.C. § 794a(a)(1); 42 USC §§ 1981a(a)(2), 2000e-5(f)-(k) & 2000e-16.

The Ninth Circuit permits compensatory damages under Title II of the ADA, upon a showing of discriminatory intent.  *Updike v. Multnomah County*, 870 F.3d 939, 950 (9th Cir. 2017). Discriminatory intent can be proven by deliberate indifference, which requires "both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that . . . likelihood." *Id.* at 955. It is enough that plaintiff show that the entity knew of the potential harm to a protected right, which may be shown by a request for an accommodation, where the need for an accommodation is apparent, or if it is required by the statute. *Id.* at 951.

At a minimum, in this instance, Defendant knew of Plaintiffs' disability because Cooley expressly told Defendant's agents that she was disabled when she asked for an accommodation from the "one-trip" order to recover her personal property. Compl. ¶ 25, 64-70.  Ms. Cooley "explained that, because of her physical limitations, she could not carry heavy items" and asked "that her husband take some essential items." *Id*. at ¶ 25.  Despite notice of her disability, Defendant did not allow additional property to be recovered beyond what could be taken in one trip and what the City arbitrarily determined was the limit in that instance.  *Id*. at ¶ 25.

*Lavan,* 693 F.3d at 1025, *Mitchell,* No. 16-cv-01750 SJO (GJSx) at *9, and numerous other lawsuits filed against the City for very similar conduct put the City

13
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

on notice that summarily destroying homeless persons' property – especially those needed to accommodate disabilities - is unconstitutional.  Compl. ¶ 38. Defendant cannot claim ignorance now to either Plaintiffs' disability or protected rights.

**D.**  **Plaintiffs' State Law Claims Are Properly Before This Court and In Compliance With The Government Claims Act**

**1.**  **Pendant jurisdiction is proper**

Because Plaintiffs adequately plead claims for relief under the Federal Constitution and Title II of the ADA, their pendant state law claims are proper under 28 U.S.C. § 1367(a) (2012).  Defendant does not, nor could it, identify any basis to decline supplemental jurisdiction in this instance.  There is (1) no novel or complex issue of state law; (2) no state law claim that substantially predominates over the federal claims; (3) no federal claims that were dismissed; and (4) no other exceptional circumstances that suggest compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). "[U]nless a court properly invokes a section 1367(c) category in exercising its discretion to decline to entertain pendant claims, supplemental jurisdiction [under section 1367(a)] *must* be asserted." *Exec. Software N. Am. v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994), *overruled on other grounds*, *Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087, 1093 (9th Cir. 2008) (emphasis added).  In this instance supplemental jurisdiction serves the "values of economy, convenience, fairness, and comity." *Id.* (internal citation and quotations omitted).

Defendant's reliance on *Harrell v. 20th Century Ins. Co.*, 934 F.2d 203, 205 (9th Cir. 1991) is misplaced.  Although *Harrell* recognized that it was generally preferable for a district court to remand pending state law claims when federal claims were dismissed, the Circuit, nonetheless, held that the district court had discretion to retain jurisdiction of the pendant claims, even after the federal claims were dismissed. *Id.  See also Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011).

### 2. Plaintiffs Cooley and Hubert submitted a class claim on behalf of all purported class members, including Mr. Zaroda

The City concedes that Plaintiffs Cooley and Hubert properly submitted a "class claim" in compliance with the Government Claims Act. MTD 20. Still, it wrongly asserts that Mr. Zaroda was required to submit his own claim. *Id.*

A government claim may be filed on behalf of a potential class. *City of San Jose v. Superior Court*, 12 Cal. 3d 447, 457 (1974). To require each class member to file a claim "in advance of the complaint would severely restrict the maintenance of appropriate class actions – contrary to the recognized policy favoring them." *Id.* A class claim need only "provide the name, address, and other specified information concerning the *representative* plaintiff and then sufficient information to identify and make ascertainable the class itself." *Id.* (emphasis in original).

Here, the class claim was filed on behalf of Ms. Cooley, Mr. Hubert, "and all similarly situated individuals living in the vicinity of 3rd and Rose on September 15, 2017." Request for Judicial Notice, Ex. B. The claim explains "the number of people who lost property on that date is believed to be approximately 75 individuals[,]" and the claimants were to be contacted through their counsel. *Id.* Mr. Zaroda is a member of the class. The class claim states, and the Complaint alleges, that all Plaintiffs had their property seized and destroyed without notice. Ms. Cooley and Mr. Hubert had some property seized while it was on 3rd Street, and some after they moved it to Rose Avenue, like Mr. Zaroda. Compl. ¶¶ 26-30. That the property was seized on the same day from two locations within a one-block radius, under inconsistent direction by LAPD officers, does create atypical claims.

### 3. Plaintiffs exhausted all administrative remedies

Defendant contends that Plaintiffs' state law claims are untimely based on what it concedes is a typographical error in ¶ 46 of the Complaint regarding the date the government claim was denied. *Id.* Defendant knows this was a typographical error since it issued the denial. MTD 20. Plaintiffs alleged that the denial issued on April 13, 2018 when, in fact, it occurred 10 days later on April 23, 2018. Compl.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

¶ 46; Exhibit 1.  By either date, the state law claims are timely.  Under the Government Code, Plaintiffs had six months from the denial to file the complaint. They filed on September 3, 2018, 133 days after the April 23, 2018 denial.  Ex. 1.

There is no need for Plaintiffs to amend. The incorporation by reference doctrine permits the Court to consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002).  The court may treat these as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  This is "not evidence, but allegations [Plaintiffs] have made." *Gerritsen v. Warner Bros. Entm't*, 116 F. Supp. 3d 1104, 1119 (C.D. Cal. 2015).

### E. Plaintiffs Alleged A Claim for Relief Under Unruh

Defendant argues that the disabled Plaintiffs have not stated a claim for violation of the Unruh Civil Rights Act because the City is not a "business establishment" and Plaintiffs have not alleged discrimination on the basis of disability.  Both arguments fail.

In *Isbister v. Boys' Club of Santa Cruz*, 40 Cal. 3d 72, 78 (1985), the California Supreme Court found that the "[l]egislature intended that the phrase 'business establishments' be interpreted in the broadest sense reasonably possible." Moreover, in *Gibson v. County of Riverside*, 181 F. Supp. 2d 1057, 1089-90 (C.D. Cal. 2002), the district court determined that the language in Unruh providing "in all business establishments of every kind whatsoever" defines only "*who* is protected and *where* they are protected from discrimination; it does not define--and limit--*what* persons are liable for such discrimination." (Emphasis in original). "[A]n organization has sufficient businesslike attributes to qualify as a business establishment when it appears to have been operating in a capacity that is the

*functional equivalent* of a commercial enterprise." *Carter v. City of L.A.*, 224 Cal. App. 4th 808, 825 (2014).

Defendant relies on language in *Carter* that held that "a public entity providing sidewalks and curbs to its citizens does so as a public servant, not a commercial enterprise[,]" that reasoning is not dispositive here. *Id.* Unlike the plaintiffs in *Carter*, Plaintiffs here do not allege that they were denied access to City sidewalks on the basis of their disability. Rather, Plaintiff Cooley and those similarly situated allege that by virtue of its remote location, they were denied a reasonable accommodation to remove their property and, also, that they were denied access to a storage facility that, potentially, had some of their personal property that City employees seized by virtue of the inability of disabled persons to get to this location. *See* Compl. ¶ 25, 33, 73.

Defendant's other authorities are similarly inapt. *Burnett v. S.F. Police Dep't*, 36 Cal. App. 4th 1177, 1191-92 (1995), *Qualified Patients Ass'n v. City of Anaheim*, 187 Cal. App. 4th 734, 763-64 (2010), and *Harrison v. City of Rancho Mirage*, 243 Cal. App. 4th 162, 175-76 (2015) all involved municipalities acting only in their capacity as legislative bodies. *Romstad v. Contra United States v. Jimenez*, 41 F. App'x 1, 46 (7th Cir. 2002) is unpublished and uncitable. *Williams v. Cty. of Alameda*, 2018 U.S. Dist. LEXIS 185930, *15-16 (N.D. Cal. Oct. 30, 2018) relies only on the cases Defendant cites, which as explained, are inapplicable here.

By carrying out the functional equivalent of a commercial enterprise, i.e. removing and storing personal property, the City acted as a "business establishment" for purposes of Unruh. As the City's motion explains, City employees carried out these actions in conjunction with its private contractor, who was "involved in hazardous waste disposal and storage of personal belongings." MTD 2. "City contractors were also involved in the sidewalk clean-up and the storage of the personal property. All belongings were stored by a third-party City contractor – not

the City."   MTD 2, FN. 3.   The City does not escape liability here because it outsourced its obligations to a third-party "business."

Finally, at this pleading stage, Plaintiffs adequately allege discrimination on the basis of their disability.   Subsection (f) of Unruh (Cal. Civ. Code § 51) provides that "a violation of the right of any individual under the federal Americans with Disabilities Act of 1990 … shall also constitute a violation of this section."   The Legislature deliberately amended state law to expressly provide that a "violation of the ADA also constitutes a violation of both the Unruh Act and the DPA" (Disabled Persons Act).   *Californians for Disability Rights v. Mervyn's LLC*, 165 Cal. App. 4th 571, 586 (2008), *citing Pickern v. Best Western Timber Cove Lodge Marina Resort*, 194 F. Supp. 2d 1128, 1131 (E.D. Cal. 2002).   As explained, *supra*, Section C, Plaintiffs have plausibility stated a claim for a violation of the ADA. Accordingly, Plaintiffs have stated a plausible claim for relief under Unruh

### F. Plaintiffs Alleged A Claim For Relief Under The Bane Act

Defendant contends that Plaintiffs fail to plead a violation of Cal. Civ. Code § 52.1.   MTD 23-24.   *Venegas v. Cty. of L.A.*, 32 Cal. 4th 820, 850-51 (2004), sufficient allegations support this claim. "Allegations of the threatening or committing of an act of violence is not necessary to state a cognizable claim under the Bane Act." *Hearns v. Gonzales,* No. 1:14-cv-01177-DAD (PC), 2016 WL 110437, at *1 (E.D. Cal. Jan. 11, 2016).   "As the California courts have recently stated, a plaintiff in such an action must allege and show two things: 1) 'intentional interference or attempted interference with a state or federal constitutional or legal right,' and; 2) 'the interference or attempted interference was by threats, intimidation or coercion.'" *Id.* (quoting *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015)).

*Venegas* held that the requirement in 52.1 to show "threat, intimidation, or coercion" does not also require a proof of "discriminatory animus or intent." *Id.* at 843.   The 'threat, intimidation or coercion' element of the claim [does not need] to

be transactionally independent from the constitutional violation alleged,' but rather a showing of the defendant's specific intent to violate the plaintiff's constitutional rights." *Rodriguez v. Cty. of L.A.*, 891 F.3d 776, 802 (9th Cir. 2018) (quoting *Reese v, County of Sacramento*, 888 F.3d 1030, 1042-43 (2018)   *See also Whitworth v. City of Sonoma*, No. A103342, 2004 WL 2106606 (Cal. Ct. App. Sept. 22, 2004) (police officer physically barring a person from entering a meeting is a form of "coercion" under the Bane Act, even if there was no actual use of force).  Here, the number of police and other City employees keeping Plaintiffs at bay while their property was destroyed evinces "coercion" under Bane.  Compl. ¶¶ 24-33.

### G. Defendant's Conduct is Not Immunized by California Statutes

Defendants cite Govt. Code § 820.4, Govt. Code §815.2 and *Towery v. State*, 14 Cal. App. 5th 226, 236 (2017), for the proposition that actions taken in violation of established constitutional law may, nonetheless, be immunized by state statutory law.  MTD 24.  Defendant's reliance on *Towery* is misplaced.  *Towery* involved a negligence suit by a prisoner who contracted valley fever.  On those facts, "in the absence of some constitutional requirement," mere negligence of the prison system would be immunized by Section 844.6.  *Towery*, 14 Cal. App. 5th at 232.  Here, Plaintiffs plead federal constitutional violations, not negligence.  As between a local law and the federal Constitution—the Constitution controls. *Smith v. Daily Mail Pub. Co.*, 443 U.S. 97, 104 (1979) ("constitutional right must prevail over the state's interest)."

### H. Plaintiffs Adequately State A Claim Under Cal. Civ. Code § 2080

The City asserts that it has some unspecified interest that should overcome Plaintiffs' constitutional rights.  The City conflates Civil Code § 2080 claims with the separate storage issues.  Section 2080 creates a duty to protect property, even if believed to be "abandoned," and to make every effort to locate and return the property to the rightful owner.

> [A]ssuming *arguendo* that the City had a valid reason to seize Plaintiffs unabandoned property under the LAMC, its conduct of immediately

destroying the property rather than holding it pursuant to Cal. Civ. Code § 2080 turns what could be an otherwise lawful seizure into an unlawful one by forever depriving an owner of his or her interests in possessing the property without recourse, in violation of § 2080, and without a sufficient governmental interest.

*Lavan v. City of L.A.*, 797 F. Supp. 2d 1005, 1016 (C.D. Cal. 2011).

Here, as in *Lavan,* Defendant immediately destroyed Plaintiffs' property while preventing Plaintiffs from moving their property.   Compl. ¶¶ 24-33.  Even if some property was not destroyed, what was not immediately destroyed was stored at a facility in downtown Los Angeles, more than 20 miles from 3rd and Rose. Compl. ¶ 10.  For indigent persons without transportation and with disabilities, this is an inaccessible location.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion should be denied in its entirety.

DATED:  April 8, 2019                    Respectfully submitted,

LAW OFFICE OF CAROL A. SOBEL


By:  /s/  Carol A. Sobel
Attorneys for Plaintiffs