MICHAEL N. FEUER, City Attorney
JAMES P. CLARK, Chief Deputy City Attorney (SBN 64780)
GABRIEL S. DERMER, Assistant City Attorney (SBN 229424)
RUTH M. KWON, Deputy City Attorney (SBN 232569)
200 North Main Street, 6th Floor, City Hall East
Los Angeles, CA 90012
Telephone:  (213) 978-7558
Facsimile:   (213) 978-7011
gabriel.dermer@lacity.org
Attorneys for Defendant

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| REBECCA COOLEY, BENJAMIN HUBERT and CASIMIR ZARODA, individually and on behalf of a class of similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF LOS ANGELES, a municipal entity; Does 1-10,<br><br>Defendants. | No. CV 18-09053 CAS (PLAx)<br><br>**DEFENDANT CITY OF LOS ANGELES'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Filed Concurrently With:**<br>▪ **[Proposed] Order**<br><br>Hearing Date:   August 5, 2019<br>Time:                10:00 a.m.<br>Ctrm:                First Street Courthouse, 8D<br><br>HON. CHRISTINA A. SNYDER<br>United States District Judge |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on August 5, 2019, at 10:00 a.m., or as soon thereafter as the matter may be heard, Defendant City of Los Angeles ("City") will, and hereby does, move this Court for an order dismissing the Third, Fourth and Fifth Causes of Action asserted in the Amended Complaint pursuant to Rules 12(b)(6) and 8(a) of the Federal Rules of Civil Procedure ("Rules"). This Motion to Dismiss ("Motion") will be made before the Honorable Christina A. Snyder, United States District Judge, located at the Federal Courthouse, 350 W. First Street, Courtroom 8D, Los Angeles, CA 90012.

This Motion is made upon this Notice, the attached Memorandum of Points and Authorities, dkt. 13-1 (Defendant's Request for Judicial Notice ("RJN") filed March 4, 2019, which Defendant renews and which has been granted in part (*see* Dkt. 21, p. 7)), all pleadings, records, and other documents on file with the Court in this action, and upon such oral argument as may be presented at the hearing of this motion.

This Motion is made following meet and confer correspondence and conversations on June 21 and 24, 2019, pursuant to Local Rule 7-3.

Dated: June 28, 2019                    Respectfully submitted,

/s/ Gabriel S. Dermer
GABRIEL S. DERMER
Assistant City Attorney
Attorneys for Defendant City of Los Angeles

1

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................1

II. PERTINENT PROCEDURAL HISTORY, ALLEGATIONS AND STATUTORY CONTEXT ...................................................................................2

    A. Relevant Procedural History ....................................................................2

    B. Relevant Factual Allegations ...................................................................3

III. THE DISABILITY DISCRIMINATION CLAIMS FAIL AS A MATTER OF LAW ........................................................................................................3

    A. Ms. Cooley does not allege how the alleged destruction of her property constitutes disability discrimination ..........................................4

    B. Ms. Cooley does not allege a legally cognizable theory of reasonable accommodation ....................................................................6

    C. Ms. Cooley has not alleged any ADA claim regarding the storage facility ...........................................................................................8

    D. The disability claim under the Unruh Act fails for the additional reason that the Plaintiffs have not alleged a "business establishment." ..................9

IV. NO BANE ACT CLAIM CAN PROCEED HERE ...........................................11

V. CONCLUSION ..................................................................................................13

# TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)......................................................................11

*Avila v. City of Santa Monica*, 2014 U.S. Dist. LEXIS 47895 (C.D. Cal. Apr. 7, 2014) 12

*Brown v. L. A. County Counsel*, 2013 U.S. Dist. LEXIS 64028 (C.D. Cal. April 30, 2013) ..................................................................................................................8

*Burgess v. Hous. Auth.*, 2006 U.S. Dist. LEXIS 101454 (N.D. Cal. Dec. 30, 2006)........4

*Burnett v. San Francisco Police Dep't*, 36 Cal. App. 4th 1177 (1995)..........................10

*Carter v. City of Los Angeles*, 224 Cal. App. 4th 808 (2014) ..........................................10

*City of Canton v. Harris*, 489 U.S. 378 (1989)..................................................................5

*Cook v. Cty. of Contra Costa*, 2016 U.S. Dist. LEXIS 31904 (N.D. Cal. Mar. 10, 2016) 12

*Crow v. State*, 222 Cal. App. 3d 192 (1990).......................................................................12

*Donahue v. State of California*, 178 Cal. App. 3d 795 (1986).........................................13

*Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001) ..........................................5

*Fall River Joint Unified School Dist.*, 206 Cal. App. 3d 431 (1988) ........................12, 13

*Ferguson v. City of Phoenix*, 157 F.3d 668 (9th Cir. 1998) ................................................5

*Fortyune v. City of Lomita*, 766 F.3d 1098 (9th Cir. 2014)..................................................7

*Gabrielle A. v. County of Orange* 10 Cal. App. 5th 1268 (2017)...................................11

*Gatto v. County of Sonoma*, 98 Cal.App.4th 744 (2002)...................................................12

*Harrison v. City of Rancho Mirage*, 243 Cal. App. 4th 162 (2015)................................10

*Huezo v. L.A. Cmty. Coll. Dist.*, 672 F. Supp. 2d 1045 (C.D. Cal. 2008) ........................5

*Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621 (9th Cir. 1988) ................................12

*Lozada v. City & Cty. of S.F.*, 145 Cal. App. 4th 1139 (2006).........................................13

*Lozada v. City and County of San Francisco,* 145 Cal. App. 4th 1139 (2006)...............12

*Mei-Ling v. City of Los Angeles*, 2012 U.S. Dist. LEXIS 199358 (C.D. Cal. April 10, 2012) ..................................................................................................................4

*Munson v. Del Taco, Inc.* 46 Cal.4th 661 (2009) ..............................................................4

*Navarro v. City of Alameda*, 2014 U.S. Dist. LEXIS 133779 (N.D. Cal. Sep. 22, 2014) 12

*Ortiz v. Lopez*, 688 F. Supp. 2d 1072 (E.D. Cal. 2010) .................................................. 12

*Pombrio v. Villaraigosa*, 2010 U.S. Dist. LEXIS 110504 (C.D. Cal. Oct. 15, 2010) ....... 6

*Qualified Patients Assn. v. City of Anaheim*, 187 Cal. App. 4th 734 (2010) .................. 10

*Romstad v. Contra Costa Cnty.*, 41 Fed. Appx. 43 (9th Cir. 2002) ................................. 10

*Rose v. Rhorer*, 2014 U.S. Dist. LEXIS 64550 (N.D. Cal. May 9, 2014) ........................ 8

*Shirk v. Vista Unified School Dist.*, 42 Cal. 4th 201 (2005) ............................................ 12

*Weinreich v. Los Angeles Cty. Metropolitan Transp. Authority*, 114 F.3d 976 (9th Cir. 1997) ..................................................................................................................... 5, 6

*Williams v. Cty. of Alameda*, 2018 U.S. Dist. LEXIS 185930 (N.D. Cal. Oct. 30, 2018) 10

**STATUTES**

42 U.S.C.§ 12132 ............................................................................................................... 4

Cal. Civ. Code § 51 ............................................................................................................ 9

**OTHER AUTHORITIES**

28 C.F.R. § 35 .................................................................................................................... 5

LAMC § 56.11 ................................................................................................................... 7

## I. INTRODUCTION

Last month this Court partially granted the City's motion to dismiss Plaintiffs' original Complaint, but provided Plaintiffs a chance to remedy the deficiencies by filing another complaint. Specifically, the Court dismissed the second claim under the Takings Clause of the Fifth Amendment; the fourth and fifth claims for purported disability discrimination (under the Americans with Disability Act and the Unruh Act); and the sixth claim for violation of the Bane Act.

The Amended Complaint ("AC") represents Plaintiffs' attempt to salvage their dismissed claims.[1]  Although Plaintiffs have abandoned their Takings claim, they attempt to revive – without the requisite supporting factual allegations – their disability discrimination and Bane Act claims.

As explained further herein, the City respectfully requests that the Court dismiss those claims on the following grounds:

- *First*, Ms. Cooley's disability discrimination claims should be dismissed.  The AC does not clearly allege how the alleged destruction of Ms. Cooley's property constitutes a violation of the ADA or the Unruh Act.  To the extent that Ms. Cooley contends that the City discriminated against Plaintiff by failing to provide her with a reasonable accommodation during the sidewalk cleaning, that theory is not clear on the face of the complaint, or legally cognizable.  And Plaintiff still fails to show standing to assert disability based on the location of the storage facility as she alleges that she witnessed all belongings were immediately destroyed.  These deficiencies were observed by the Court in its prior Order and have not been remedied.  Dkt. No. 21, p. 10.
- Ms. Cooley's state law claim under the Unruh Act fails alongside the ADA claim. Furthermore, based on the facts alleged the City is not a "business establishment"

---

[1] The City does not move to dismiss the Constitutional claims so that Plaintiffs' allegations may be tested during the factual discovery phase of this case.

1

for purposes of the Unruh Act.

- *Second*, Plaintiffs' Bane Act claim should be dismissed. In Ms. Cooley's and Mr. Huberts government claim (Mr. Zaroda did not submit one), they make no mention of any threat of arrest or any threat of pepper spray use (now alleged more than 17 months after the incident) and the Amended Complaint still does not connect that behavior to any purported interference with each of the three Plaintiff's rights under the Constitutional or ADA.

For the foregoing reasons, Defendant respectfully requests that the City's Motion to Dismiss be granted in its entirety without leave to amend.

## II. PERTINENT PROCEDURAL HISTORY, ALLEGATIONS AND STATUTORY CONTEXT

### A. Relevant Procedural History

Represented by counsel, Ms. Cooley and Mr. Hubert submitted a joint government claim dated March 15, 2018, which was received by the City Clerk's Office on March 16, 2018. RJN Ex. B. That letter was submitted "on behalf of Benjamin Hubert and Rebecca Cooley and all similarly situated individuals in the vicinity of 3rd and Rose on September 15, 2017." Mr. Zaroda did not submit a separate government claim for the loss of his transit pass or any other property which was purportedly lost. The government claim did not allege any request or denial of a request for disability accommodation, and did not allege that any plaintiff had been threatened with arrest or pepper spray.

On October 21, 2018, Plaintiffs, represented by the same counsel for the plaintiffs in *Mitchell* and *Lavan*, filed this lawsuit as a putative class action. The Complaint was served on the City or about January 10, 2019. On May 1, the Court partially granted the City's motion to dismiss. Dkt. No. 21. On May 22, Plaintiffs filed an Amended Complaint. Dkt. No. 21.

2

### B. Relevant Factual Allegations

This lawsuit arises from a weekday morning sidewalk cleaning in the 3rd and Rose Avenue area within the Venice neighborhood of Los Angeles. AC ¶ 19. Named plaintiffs Rebecca Cooley, Benjamin Hubert, and Casimir Zaroda are individuals who at the time of the sidewalk-cleaning lived on the sidewalks in that area. Plaintiffs *admit* that "[c]onsistently, for over two years," the City provided advance written notice of a sidewalk-cleaning (Compl. ¶ 20). But Plaintiffs assert that **on a single occasion** – on September 15, 2017 – they did not receive written notice (which the City disputes), so left their personal belongings on the sidewalks and departed.

When Ms. Cooley, Mr. Hubert, and Mr. Zaroda returned to their belongings, the sidewalks had already been closed and the streets cordoned off for sanitation vehicles, and the City's Sanitation workers and contractors were in the process of cleaning. Nevertheless, City employees permitted Plaintiffs to cross the erected "yellow 'caution' tape" to retrieve some of their belongings. *See* AC ¶ 25, 26-27 (60-gallons worth of property retrieved), ¶ 28 (both bicycles retrieved); ¶ 30 (retrieved some property), Plaintiffs sue because they allege that they were not able to retrieve all of their personal belongings. They allege that that property was "summarily destroyed." *See* AC ¶¶ 31 and 35. Although Plaintiffs attempt to bring claims based upon the purported distance to the storage facility, no Plaintiff alleges that their belongings were stored there.

## III. THE DISABILITY DISCRIMINATION CLAIMS FAIL AS A MATTER OF LAW

The disability claims, whether under Title II of the ADA or under the state's Unruh Act, do not satisfy Rule 8(a). This Court has held that Ms. Cooley's discrimination claims[2] have previously failed because the pleadings (1) do not clearly

---

[2] Although not entirely clear from the Amended Complaint which aims to make each named Plaintiff a representative class member, it is apparent that neither Mr. Hubert nor Mr. Zaroda can even attempt to plead a disability discrimination claim. Mr. Hubert is not alleged to have a disability. Mr. Zaroda is alleged to have unidentified

allege how the destruction of Ms. Cooley's property constitutes a violation of the ADA or the Unruh Act; (2) to the extent that Ms. Cooley contends that the City discriminated against Ms. Cooley by failing to provide her with a reasonable accommodation during the area cleaning, this theory is not clear on the face of the pleadings, and (3) with respect to the location of the storage facility, Ms. Cooley did not appear to have standing to assert claims based on the location of the storage facility as she alleges that she witnessed all her belongings get thrown away. Dkt. No. 21, p. 10.

The Amended Complaint does not remedy any of these deficiencies.

### A. Ms. Cooley does not allege how the alleged destruction of her property constitutes disability discrimination

Title II of the ADA provides that "no qualified individual with a disability shall, *by reason of such disability,* be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, *or be subjected to discrimination* by any such entity." 42 U.S.C.§ 12132 (italics added). A plaintiff seeking to establish a cause of action for damages under the Unruh Civil Rights Act must plead and prove intentional discrimination in public accommodations in violation of the terms of the Act, or alternatively, a violation of the ADA. *Mei-Ling v. City of Los Angeles*, 2012 U.S. Dist. LEXIS 199358 (C.D. Cal. April 10, 2012), *citing Munson v. Del Taco, Inc*. 46 Cal.4th 661, 664 (2009). Where a plaintiff fails to establish a violation under the ADA, any Unruh claim premised on an ADA violation also fails. *Burgess v. Hous. Auth*., 2006 U.S. Dist. LEXIS 101454 (N.D. Cal. Dec. 30, 2006).

In order to allege a public program or service violates Title II of the ADA, a plaintiff must sufficiently allege facts showing all of the following: (1) she is a "qualified individual with a disability;" (2) she was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise

---

"psychological disabilities" (AC ¶ 14), but he has not alleged an ADA claim or filed a government claim to support his state law claims under Unruh Act or Bane Act claim relating to disability discrimination. *See* RJN Ex. B.

4

1  discriminated against by the public entity; and (3) such exclusion, denial of benefits, or
2  discrimination was *by reason of her disability. Weinreich v. Los Angeles Cty.*
3  *Metropolitan Transp. Authority*, 114 F.3d 976, 978 (9th Cir. 1997).

4  For Ms. Cooley to recover the monetary damages she seeks (as opposed to an
5  injunction for disabled individuals), it is not enough to prove that an ADA violation
6  exists, a plaintiff must assert intentional discrimination on the part of the defendant.
7  *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001); *Ferguson v. City of*
8  *Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998); *Huezo v. L.A. Cmty. Coll. Dist.*, 672 F.
9  Supp. 2d 1045, 1046 (C.D. Cal. 2008) ("Liability under the ADA . . . can be established
10 without a showing of discriminatory intent. To recover compensatory damages, however,
11 intentional discrimination must be proven.")  In the Ninth Circuit, the "deliberate
12 indifference" standard applies. *Duvall*, 260 F.3d at 1139. Deliberate indifference requires
13 both knowledge that a harm to a federally protected right is substantially likely, and a
14 failure to act upon that the likelihood. *Duvall*, 260 F.3d at 1139 (citing *City of Canton v.*
15 *Harris*, 489 U.S. 378, 389 (1989)). To meet the second prong, the local entity's failure to
16 act must be more than "bureaucratic slippage;" the failure to act "must be a result of
17 conduct that is more than negligent, and involves an element of deliberateness." *Id*.

18 Here, Ms. Cooley does not allege how the purported destruction of her property
19 discriminated against her based upon her disability violated the ADA or Unruh.
20 According to Ms. Cooley's own allegations, her property was destroyed along with
21 property belonging to other homeless individuals and potentially property belonging to
22 non-homeless individuals dumped onto those sidewalks and streets. To the extent that
23 her financial circumstances resulted in her having to live on the streets on the first place,
24 the sidewalk cleaning may have unfairly impacted Ms. Cooley, but they do not form the
25 basis for a disability discrimination claim.  Homelessness, poverty, and other economic
26 disadvantages are disabling, but they do not qualify as disabilities under the ADA. *See*
27 28 C.F.R. § 35 app. B ("Physical or mental impairment does not include . . .
28

1  environmental, cultural, economic, or other disadvantages, such as having a prison
2  record, or being poor.").

3  Moreover, courts have held that the consequential effects of policies
4  disproportionately affecting homeless or poor individuals does not equate to an ADA
5  violation, much less intentional discrimination under the ADA. *See, e.g., Weinreich*, 114
6  F.3d at 979 ("[Plaintiff's] lack of 'meaningful access' to the Reduced Fare Program was
7  not due to his medical disability, but rather to his inability to satisfy a condition of
8  eligibility because of his financial circumstances."); *see also Pombrio v. Villaraigosa*,
9  No. 10-5604 GHK (MAN), 2010 U.S. Dist. LEXIS 110504, at *11 (C.D. Cal. Oct. 15,
10 2010) (holding that the library's no-bags policy is not an ADA violation because "[the
11 plaintiff's] disability is implicated only because it made it painful for him to walk to a
12 place where he was able to leave his bags," and enforcement of that policy was not
13 discriminatory because it was not due to his disability). The Complaint does not allege
14 an ADA or Unruh Act claim.

15 **B.    Ms. Cooley does not allege a legally cognizable theory of reasonable**
16 **accommodation**

17 The duty to provide "reasonable accommodations" under the ADA arises only when
18 a public policy discriminates "on the basis of disability." *Weinreich*, 114 F.3d at 978.
19 But even if she could establish disability discrimination of some sort, Cooley still fails to
20 allege facts showing how a request to prevent her property from being destroyed
21 constitutes a reasonable accommodation of a disability or how she was denied a service
22 or benefit afforded to non-disabled individuals.

23 Ms. Cooley's request directed to a City employee (an LAPD officer) appears to
24 have been partially, if not entirely *granted*. AC ¶¶ 26-28. Specifically, Ms. Cooley
25 alleges that "due to her disability and physical limitations" (which is not alleged to have
26 any relationship with her purported Crohn's disease disability), she "needed her husband
27 to take some essential items for her." AC ¶ 26. That request appears to have been
28

6

largely *granted* by sympathetic City police officers, even though the City's sidewalk had already been closed with yellow-tape and the sidewalk cleaning was in process. *See* AC ¶¶ 26-28 (any items fitting 60-gallon trash bag, two operable bikes, and one sleeping bag recovered).

Ms. Cooley does not, because she cannot, allege that other non-disabled individuals were entitled to cross the yellow tape or recover more than what she and her husband were permitted to recover. Based upon the factual allegations, Ms. Cooley was afforded opportunities not provided other homeless individuals. *As pled*, the Plaintiffs were treated the same – if not better – than other homeless people whose property was located within the sidewalk cleaning area. No ADA claim lies in such circumstances.

At bottom, Ms. Cooley's theory is flawed under the ADA. She assumes that her disability *exempted all* her personal belongings from the City's sidewalk-cleaning and clearing efforts and purported property destruction. She is wrong.

There are no factual allegations upon which the Court can draw a reasonable theory that non-destruction of personal property is a municipal "benefit" or "service" cognizable under the ADA. Indeed, it is the City sidewalk maintenance and clearing that is itself the municipal benefit or service here. *See Fortyune v. City of Lomita*, 766 F.3d 1098, 1102 (9th Cir. 2014). For that reason, sidewalks are cleared, maintained, and made accessible to disabled individuals and wheeled mobility devices.

For this reason, Section 56.11 prohibits blocking the sidewalks in a manner that would hinder disabled access. *See* RJN Ex. A (LAMC § 56.11(3)(d)) ("No person shall Store any Personal Property in a Public Area in such a manner that it does not allow for passage as required by the [ADA]." In addition, Section 56.11 gives protections for the seizure of an "operational bicycle or operational walker, crutch or wheelchair." RJN Ex. A (LAMC § 56.11(2)(c).)

Ms. Cooley has failed to allege a request for reasonable accommodation for her disability, the denial of which prevented her from obtaining the benefit of a cognizable

City benefit or service. Her disability discrimination claim should be dismissed under Rule 8(a) and/or 12(b)(6).

### C. Ms. Cooley has not alleged any ADA claim regarding the storage facility

The Amended Complaint, like the original Complaint, fails to assert any allegations to support a disability claim relating to the storage facility. It should be dismissed. In May, this Court held, in pertinent part:

> And with respect to the storage facility, it appears that plaintiff Cooley does not have standing to assert an ADA or Unruh Act claim based on the location of the storage facility as she1 alleges that she witnessed all her belongings get thrown away. Compl. ¶ 29. As none of Cooley's allegations suggest that her possessions ended up in a storage facility, the location of the storage facility appears to be irrelevant for purposes of this action

Dkt. No. 21, p. 10.

As explained in the City's first motion to dismiss, none of the named plaintiffs, *with or without a disability*, are alleged to have even attempted to travel to the storage facility, much less call to recover any personal property.[3] Failure to access the storage facility (as well as the lack of any indication that plaintiffs ever will) warrants dismissal of this claim. *See Brown v. L. A. County Counsel*, No. 13-00154 PA (VBK), 2013 U.S. Dist. LEXIS 64028, *27-28 (C.D. Cal. April 30, 2013) (dismissal of ADA claim where no factual allegation "from which it could reasonably be inferred that plaintiff sought any more appropriate housing, or that his housing was assigned or denied intentionally because of his disability"); *see also Rose v. Rhorer*, No. 13-03502 WHO, 2014 U.S. Dist. LEXIS 64550, at *17 (N.D. Cal. May 9, 2014) (no deliberate indifference where

---

[3] Moreover, Ms. Cooley does not allege that the City-contracted storage facility itself had architectural barriers, but rather that the "location" of the storage facility violated ADA. Defense counsel has not found any authority that would require a municipality to establish a facility closer to a disabled individual for the storage of impounded vehicles, or for any other detained personal property such as the personal belongings at issue in this case.

8

1 plaintiff had not alleged any request or refusal for an accommodation to use the
2 reservation process for a homeless shelter, which involved long lines at resource centers
3 that had changing locations and inconsistent hours).

In other filings with this Court, Plaintiffs further asserted that they were present to witness their property being destroyed. Dkt. No. 16, 12:24-27 (property destroyed "as Plaintiffs watched"); *see also* AC ¶ 29; Compl. ¶ 29 (alleging property thrown into large trash truck with a garbage compressor "as Plaintiffs stood nearby and watched").

Yet the Amended Complaint still attempts to assert such claims. *AC* ¶ 37, 71, 73-74. Assuming the factual allegations to be true, Ms. Cooley does not have standing to assert any claims associated with the storage facility.[4] The ADA claim should be dismissed.

### D. The disability claim under the Unruh Act fails for the additional reason that the Plaintiffs have not alleged a "business establishment."

As explained to Plaintiffs in prior briefing with this Court, California's Unruh Civil Rights Act, as set forth in Cal. Civ. Code § 51, prohibits a "business establishment" from discriminating against "persons within the jurisdiction of this state" based upon "their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation." Cal. Civ. Code § 51(a). The Unruh Civil Rights Act "shall not be construed to confer any right or privilege on a person that is conditioned or limited by law or that is applicable alike" to all persons. (§ 51(c).) Here, Plaintiffs have not, and cannot, adequately plead or prove that (a) the City is a "business establishment."

That is because neither the Department of Public Works, the Los Angeles Police Department, nor the City (the sole named Defendant) was acting, in any way as a "business establishment" vis a vis Plaintiffs. "An organization has sufficient businesslike

---

[4] For the same reason, Plaintiffs would lack standing for any of the Constitutional claims relating to lack of post-removal notice, or for purported failure to store items of value under Cal. Civ. Code § 2080. These claims are defective.

9

attributes to qualify as a business establishment when it appears to have been operating in a capacity that is the functional equivalent of a commercial enterprise." *Carter v. City of Los Angeles*, 224 Cal. App. 4th 808, 825 (2014) (a city acts as a public servant, not a commercial enterprise, when it provides sidewalks and curbs to its citizens). Several Courts have determined that the Unruh Civil Rights Act does not apply to government entities because they are not "business establishments." *See Burnett v. San Francisco Police Dep't*, 36 Cal. App. 4th 1177, 1191-92 (1995) (Unruh does not apply to legislative bodies); *Qualified Patients Assn. v. City of Anaheim*, 187 Cal. App. 4th 734, 763-64 (2010) (enacting legislation does not convert a government entity into a "business establishment" for Unruh purposes); *Harrison v. City of Rancho Mirage*, 243 Cal. App. 4th 162, 175-76 (2015) (a city is not a "business establishment" for purposes of Unruh); *Romstad v. Contra Costa Cnty.*, 41 Fed. Appx. 43, 46 (9th Cir. 2002) (holding the district court did not err when it found that the California Department of Social Services is not a "business establishment" for purposes of the act); *Williams v. Cty. of Alameda*, 2018 U.S. Dist. LEXIS 185930, *15-16 (N.D. Cal. Oct. 30, 2018) (collecting cases and finding that various government entities were not "business establishments" for purposes of Unruh because the nature, purpose, and structure of each entity were that of a public servant.)

Similarly, here, there is no meaningful allegation that supports the City being a "business establishment" under Civil Code section 51. Plaintiffs contend that on the morning of September 15, 2017, City employees conducted a sidewalk cleaning, while members of the LAPD provided "road closure" support. Plaintiffs' conclusory allegation that "Defendant, through its agents and employees in the LAPD and Department of Public Works, is a 'business establishment' within the meaning of §51" (AC ¶ 79; Compl at ¶ 74) – without any showing that the City was acting in the functional equivalent of any commercial enterprise –are insufficient to support a claim that the Unruh Civil Rights Act was violated by Defendant. *See Ashcroft v. Iqbal,* 556 U.S. 662,

678 (2009) (the Court is "not bound to accept as true a legal conclusion couched as a factual allegation.")

Here, the City was providing essential, public services in conducting the sidewalk cleanings.  The City has a duty to maintain the health and safety of the sidewalks for all residents including homeless individuals. Plaintiffs have not pled, and cannot plead, any facts showing that the City was acting as "business establishment" with regard to Ms. Cooley's purported property destruction.  The Unruh Claim should be dismissed.

**IV.    NO BANE ACT CLAIM CAN PROCEED HERE**

In dismissing the Bane Act claim, this Court observed the Plaintiffs had not alleged facts showing that "the City directed any threats of arrest or intimidation towards any of the named plaintiffs." Dkt. No. 21, p. 11.  The Bane Act and related statutes 'are California's response to [the] alarming increase in hate crimes.' … Civil Code section 52.1 provides that a person may bring a cause of action 'in his or her own name and on his or her own behalf' against anyone who 'interferes by threats, intimidation or coercion, with the exercise or enjoyment' of any constitutional or statutory right." [Citation.] *Gabrielle A. v. County of Orange* 10 Cal. App. 5th 1268, 1290 (2017). "[T]o state a cause of action under section 52.1 there must first be violence or intimidation by threat of violence." *Id.*

Now, in an attempt to revive their Bane Act claims, Plaintiff Cooley[5] *for the first time* since the September 2017 sidewalk-cleaning, alleges that an officer told her she would be arrested if she did not move away from the area and threatened to pepper spray her. *See* AC ¶ 10.  A Court need not accept such self-serving allegations.

But even if the Court assumes this allegation to be true, the Bane Act claim must be dismissed for failure to comply with the Government Claims Act. Gov. Code § 810 *et seq*.  Presenting a claim to a government entity prior to filing suit is not merely a

---

[5] No such allegations of threatening conduct are alleged to have been directed at Plaintiffs Hubert or Zaroda.  Accordingly, the Bane Act claim as to those Plaintiffs should be dismissed with prejudice.

11

1   procedural requirement; it is an element of the ensuing cause of action. *Karim-Panahi v.*
2   *L.A. Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988); *Shirk v. Vista Unified School Dist.*,
3   42 Cal. 4th 201, 209 (2005); *Lozada v. City and County of San Francisco,* 145 Cal. App.
4   4th 1139, 1152 (2006) (citations omitted). "The claim filing requirement has been held
5   applicable to claims arising out of negligence, nuisance, breach of statutory duties,
6   intentional wrongs and contract." *Id*. (quotations omitted). Suits brought under the Bane
7   Act must also comply with the claims presentation requirements. *Gatto v. County of*
8   *Sonoma*, 98 Cal.App.4th 744, 763 (2002).

9       In order to comply substantially with the Government Claims Act, a submitted
10  government claim must contain material facts and provide sufficient notice of the
11  theories of liability contained in the filed Complaint. *Avila v. City of Santa Monica*, 2014
12  U.S. Dist. LEXIS 47895, at *10 (C.D. Cal. Apr. 7, 2014) ("[T]here is insufficient
13  information for a public agency to investigate a tort claim when liability is alleged on an
14  entirely different factual basis from that stated in the tort claim.) (citing *Fall River Joint*
15  *Unified School Dist.*, 206 Cal. App. 3d 431, 434 (1988) (holding that government claim
16  did not provide notice of negligent supervision theory); *Cook v. Cty. of Contra Costa*,
17  2016 U.S. Dist. LEXIS 31904, at *10 (N.D. Cal. Mar. 10, 2016) (holding that facts
18  alleged in the complaint diverged too greatly from the facts alleged in the plaintiff's tort
19  claim); *Navarro v. City of Alameda*, 2014 U.S. Dist. LEXIS 133779, at *6 (N.D. Cal.
20  Sep. 22, 2014) (government claim did not provide sufficient notice of his disability
21  theory and claims); *Ortiz v. Lopez*, 688 F. Supp. 2d 1072, 1085 (E.D. Cal. 2010)
22  (government claim, which discussed only intentional acts, did not provide notice of the
23  negligent hiring and supervision claim); see also *Crow v. State*, 222 Cal. App. 3d 192
24  (1990) (tort claim alleging assault on student did not support breach of dormitory
25  contract).

26      The state Supreme Court has held that the Claims Act's claims presentation
27  requirements serve multiple purposes. They give the government entity "an opportunity
28

to settle just claims before suit is brought," "permit the entity to make an early investigation of the facts on which a claim is based, thus enabling it to defend itself against unjust claims and to correct the conditions or practices which gave rise to the claim," and also "enable the public entity to engage in fiscal planning for potential liabilities and to avoid similar liabilities in the future. *Lozada v. City & Cty. of S.F.*, 145 Cal. App. 4th 1139, 1151 (2006) (citations and quotes omitted). Accordingly, a subsequently filed lawsuit cannot be based on a different set of facts from those presented in any government claim. *See, e.g., Fall River*, 206 Cal.App.3d at 434; *Donahue v. State of California*, 178 Cal. App. 3d 795 (1986).

Here, in Ms. Cooley's government claim, she makes no reference at all to a threats of arrest or intimidation by any police officer, much less a threat to use pepper spray on her. *See* RJN Ex. B. Ms. Cooley does not, because she cannot, allege facts explaining warranting a late filing of a government claim. Accordingly, the City was presented with no information in the government claim regarding this alleged threat, whether to investigate, correct, or simply to assess liability. Ms. Cooley's Bane Act claim should be dismissed with prejudice for failure to comply with the Government Claims Act.

## V.    CONCLUSION

For the reasons stated above, Defendant respectfully requests that the Court grant Defendant's Motion to Dismiss, without leave, the Third, Fourth and Fifth Causes of Action of Plaintiffs' Amended Complaint.

Dated: June 28, 2019                   Respectfully submitted,

/s/ Gabriel S. Dermer
GABRIEL S. DERMER
Assistant City Attorney

Attorneys for Defendant City of Los Angeles