1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CAROL A. SOBEL** SBN 84483
**MONIQUE A. ALARCON** SBN 311650
**LAW OFFICE OF CAROL A. SOBEL**
725 Arizona Avenue, Suite 300
Santa Monica, CA 90401
t. 310.393.3055
e. carolsobel@aol.com
e. monique.alarcon8@gmail.com

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

REBECCA COOLEY, BENJAMIN HUBERT, and CASIMIR ZARODA, individually and on behalf of a class of similarly situated persons,

           Plaintiffs,

     v.

The CITY OF LOS ANGELES, a municipal entity; DOES 1-10,

           Defendants.

Case No.: 2:18-cv-09053-CAS-PLA

**PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF LOS ANGELES'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Date: August 5, 2019
Time: 10:00 AM
Ctrm: First Street Courthouse, 8D
Hon. Christina A. Snyder

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PLAINTIFFS STATE A TITLE II ADA VIOLATION

### A. Factual Allegations

Plaintiff Cooley alleges that the City discriminated against her, and those similarly situated, based on enforcement of Los Angeles Municipal Code ("LAMC") § 56.11, by failing to reasonably accommodate her disability when it refused to grant her additional time to move her belongings during the City's area cleaning program. The failure to allow for a reasonable accommodation violates Title II of the ADA, 42 U.S.C. § 12132.

By its terms, other than providing that wheelchairs and other mobility devices will not be thrown away, LAMC § 56.11 provides no allowance for disability accommodation even though the City well knows that a significant number of those who are homeless on its streets are disabled: 18 percent have a physical disability, 25 percent report serious mental illness, 9 percent are developmentally disabled and many have more than one co-existing disability, including various medical conditions classified as disabilities. *See* Los Angeles Homeless Services Authority ("LAHSA") 2019 Point in Time Report re Continuum of Care, available at: https://www.lahsa.org/documents?id=3422-2019-greater-los-angeles-homeless-count-los-angeles-continuum-of-care.pdf.

Ms. Cooley alleges that she was denied a reasonable accommodation when she returned to 3rd Avenue and attempted to claim her property before it was thrown away during an unannounced area cleaning by the City's sanitation department. FAC ¶26.  She asked to be allowed more than one trip to take away property because of her disabilities significantly limiting what she could carry at one time.  *Id.*  Among the personal belongings of Ms. Cooley and her husband, Plaintiff Hubert, were two fully operable bicycles they used for transportation.  *Id.* at 28.

The officers were aware of the request and need for a reasonable accommodation because Ms. Cooley explained it to them.  *Id.* at 26.  Nonetheless, Ms. Cooley's request for additional time to move her belongings and have her husband carry them out for her was denied.  *Id.* at 26-27.  Even when Plaintiff Hubert gathered everything he could carry in one trip and began to take both of their bicycles, as well, he was stopped by an LAPD officer who told him he could only take one bicycle.  *Id.* at 28.  Only after pleading with a different officer were Plaintiffs able to save both bikes, but not both sleeping bags.  *Id.*  There was no reason why the requested reasonable accommodation could not have been granted in full in this instance so Plaintiffs could have preserved their property.  Moreover, after Cooley and her husband moved the property they were permitted to take from 3rd to Rose Avenue, as directed by LAPD officers, she was threatened with OC spray when she tried to save her property before it was destroyed, including medically necessary nutritional food supplies.  *Id.* at ¶ 32.

Plaintiffs allege that other putative class members were similarly denied an accommodation.  *Id.* at 33.  As but one example, a severely disabled individual was unable to retrieve a cart he attached to his bicycle that allowed him to move his property.  Despite being informed of why the cart was needed to accommodate a disability, when another homeless person attempted to assist him, LAPD officers forced her to the ground, threatened her with OC spray, and handcuffed her.  *Id.*

**B. Plaintiffs Sufficiently Alleged an ADA Violation**

Plaintiffs adequately allege a denial of reasonable accommodations, in violation of Title II.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132. It covers "'anything a public entity does.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th

1   Cir. 2001), *quoting Yeskey v. Pa. Dep't of Corr.*, 118 F.3d 168, 171 (3d Cir. 1997),

2   *aff'd*, 524 U.S. 206 (1998).

3        A denial of "meaningful access" occurs when persons with disabilities are

4   disproportionately burdened due to their unique needs, or a public entity fails to

5   provide reasonable accommodations.  The ADA covers both "intentional exclusion"

6   and "discriminatory effects" from the denial of "meaningful access" to services,

7   programs or activities. *Crowder v. Kttagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996),

8   citing *Alexander v. Choate*, 469 U.S. 287, 302 (1985).  "To establish a violation of

9   Title II of the ADA, a plaintiff must show that (1) she is a qualified individual with

10  a disability; (2) she was excluded from participation in or otherwise discriminated

11  against with regard to a public entity's services, programs, or activities, and (3) such

12  exclusion or discrimination was by reason of her disability." *Lovell v. Chandler*, 303

13  F.3d 1039, 1052 (9th Cir. 2002).

14       Under Title II, the City as a "public entity shall make reasonable modifications

15  in policies, practices, or procedure when … necessary to avoid discrimination on the

16  basis of disability, unless [it] can demonstrate that making modifications would

17  fundamentally alter the nature of the service, program, or activity." 28 C.F.R. §

18  35.130(b)(7).[1]  No such showing can be made here.

19       A facially neutral program may violate the ADA if it disparately impacts or

20  places a disproportionate burden on disabled persons. *Alexander*, 469 U.S. at 299,

21  309; *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (Circuit has

22  "repeatedly recognized that facially neutral policies may violate the ADA when such

23  policies unduly burden disabled persons, even when such policies are consistently

24  enforced"); *id.* at 1271 (facially neutral policy may violate the ADA without

25  evidence that a non-disabled person was treated differently).  A violation of the ADA

26  may be based on disparate treatment, disparate impact, or a failure to provide a

27

28  [1] "Reasonable modifications" and "reasonable accommodations" are the same.
    *Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 816 n.26 (9th Cir. 1999).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FAC

reasonable accommodation. *Id.,* at 1266. "The 'failure to provide [a] reasonable accommodation can constitute discrimination.' A public entity may not disregard the plight and distress of a disabled individual." *Updike v. Multnomah County*, 870 F.3d 939, 951, *citing Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002).

In *McGary,* the Plaintiff was cited for violating City nuisance laws and given a set amount of time to clean up his yard to abate the nuisance.  When he asked for more time based on his disability, the request was denied on the basis that the City treated disabled and non-disabled violators alike. The Circuit rejected the reasoning that the plaintiff had to allege that the City inconsistently enforced its policy. 386 F.3d at 1266.  "Indeed, the crux of a reasonable accommodation claim is a facially neutral requirement that is consistently enforced." *Id.*  The "ADA's reasonable accommodation requirement is to guard against the façade of 'equal treatment' when particular accommodations are necessary to level the playing field." *Id*. at 1267.

In their prior motion to dismiss, the City claimed it had no obligation to accommodate Plaintiff because she failed to identify a disability and a program from which she was excluded or disadvantaged on the basis of her disability. *See* Dkt #12: Section IV.A.  Now, Defendant contends it did accommodate her and did enough, so the City has no liability.  As discussed in Section C, below, the sufficiency of reasonable accommodations is a question of fact.

The City also erroneously contends that Plaintiff must allege how she was a denied a benefit or service afforded to persons without disabilities.  Mot. Dismiss at 6.  As noted above, this argument about the failure to plead a "comparison class" for an ADA violation has been repeatedly rejected by the Ninth Circuit because it runs afoul of the purpose of the ADA.  *See McGary*, 386 F.3d at 1266, *citing Olmstead v. Zimring*, 527 U.S. 581, 598 (1999).

**C. The Reasonableness of an Accommodation is a Question of Fact**

Title II creates an affirmative obligation for a public entity to make "reasonable modifications" when necessary to avoid discrimination based on

4

disability unless the requested modifications would fundamentally alter the nature of the service, program, or activity. 28 C.F.R. § 35.130(b)(7).  That said, at this stage of the litigation, whether Ms. Cooley or any other member of the putative class was granted an accommodation, in whole or in part, whether such accommodation was adequate, and whether a different accommodation would "fundamentally alter" the City's services or program is a disputed factual. *McGary*, 386 F.3d at 1270.  Rule 12(b)(6) tests only whether Plaintiffs stated a claim, not whether they will ultimately prevail.  *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011).  It does not resolve contests surrounding the facts or the applicability of defenses. *Id*. at 1216.

### D. Denial of A Reasonable Accommodation Supports Damages

Once Plaintiffs meet their burden to establish a Title II violation, nothing more is required to state a claim for damages.  The failure to provide a reasonable accommodation is itself discrimination.  *Updike*, 870F.3d at 951. Evidence of discriminatory animus is not required.  *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008)..  Compensatory damages under Title II are proper upon a showing of discriminatory intent.  *Updike*, 870 F.3d at 950-51. "Discriminatory intent" is evinced by showing that the defendant acted with deliberate indifference, i.e., "both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that . . . likelihood." *Id*., *citing Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001).  .  To meet the first prong, it is enough that a Plaintiff alert the public entity to the need for an accommodation, or the need for an accommodation is apparent.  *Id*. at 951.  "To meet the second prong, the entity's failure to act must be a result of conduct that is more than negligent." *Id.*

As explained, *supra*, Plaintiff Cooley has adequately alleged that the City discriminated against her by failing to reasonably accommodate her disability during the area cleaning.  FAC ¶¶26-28, 65-75.  Additionally, Plaintiffs allege that the City is well-informed through its annual Point-in-Time count that "nearly half of people experiencing homelessness in the City have one or more disabilities that require

reasonable accommodations for compliance with City policies, practices and customs." *Id.* at ¶¶ 64, 69. Despite this knowledge, the City has no provision for disability accommodations in LAMC 56.11, no implementing regulations to allow for disability accommodations, and no guidance for employees.

In *Duvall*, the Ninth Circuit held that there was a triable issue of fact regarding deliberate indifference. The plaintiff submitted evidence showing that the Defendants "had notice of his need for the accommodation involved and that they failed despite repeated requests to take the necessary action." 260 F.3d at 1140. The same is true here. On the facts alleged, they are entitled to go forward on their claim for compensatory damages.

## II.   PLAINTIFFS STATE A CLAIM UNDER THE UNRUH ACT

### A. A Violation of the ADA is a Violation of Unruh

Subsection (f) of the Unruh Civil Rights Act provides that "a violation of the right of any individual under the federal Americans with Disabilities Act of 1990 … shall also constitute a violation of this section." Cal. Civ. Code § 51(f). *See also Hubbard v. SoBreck, LLC*, 554 F.3d 742, 745 (9th Cir. 2009) (violation of the ADA is a violation of the California Unruh Act). Because Plaintiffs have alleged an ADA claim, they allege a plausible claim for relief under Unruh.

### B. The City is Not Exempt from Compliance with Unruh

The Unruh Act is broadly interpreted. Although the statute talks of "all business establishments of every kind whatsoever," Cal. Civ. Code § 51(b), the California Supreme Court has interpreted the terms "all" and "of every kind whatsoever" as evidence of the legislative intent to use the terms in the broadest sense. *O'Connor v. Vill. Green Owners Ass'n*, 33 Cal. 3d 790, 795 (1983).

As explained in opposition to the City's first motion to dismiss, the cases cited by the City are inapposite. In *Carter v. City of Los Angeles*, 224 Cal. App. 4th 808, 825 (2014), dealing with the physical conditions of the City's sidewalks, the California Court of Appeals held that "a public entity providing sidewalks and curbs

to its citizens does so as a public servant, not a commercial enterprise." Unlike the plaintiffs in *Carter*, Plaintiffs here do not allege that they were denied access to City sidewalks on the basis of their disability.

Rather, they allege that they were discriminated against by reason of their disability by a City ordinance and a Bureau of Sanitation program. FAC ¶¶26-28, 65-75. *Burnett v. S.F. Police Dep't*, 36 Cal. App. 4th 1177, 1191-92 (1995), *Qualified Patients Ass'n v. City of Anaheim*, 187 Cal. App. 4th 734, 763-64 (2010), and *Harrison v. City of Rancho Mirage*, 243 Cal. App. 4th 162, 175-76 (2015) do not defeat Plaintiffs' claims because there, unlike here, the municipalities were acting  as legislative bodies. Similarly, *Williams v. Cty. of Alameda*, 2018 U.S. Dist. LEXIS 185930, *15-16 (N.D. Cal. Oct. 30, 2018) relies only on the cases Defendant cites, which as explained, are inapplicable here.[2]

Public entities may be liable for Unruh Act violations even though they are not considered business entities in the narrow definition of that term. *See Gibson v. County of Riverside*, 181 F. Supp. 2d 1057, 1098 (C.D. Cal. 2002) (County violated the Unruh Act by enforcing an age restriction which precluded families with children from obtaining housing); *Gatto v. Cty. of Sonoma*, 98 Cal. App. 4th 744, 769 (2002) (Unruh Act applied to the enforcement of a dress code at a county fair,).  Public schools have also been held to be business establishments under Unruh. *See Sullivan v. Vallejo City Unified Sch. Dist.*, 731 F. Supp. 947, 952-53 (E.D. Cal. 1990) (denying motion to dismiss Unruh Act claim because the public school district is a "business establishment"); *Nicole M. v. Martinez Unified Sch. Dist.*, 964 F. Supp. 1369, 1388-89 (N.D. Cal. 1997) (same); *Doe v. Petaluma City Sch. Dist.*, 830 F. Supp. 1560, 1581-82 (N.D. Cal. 1993) (same).

---

[2] Defendant cites *Romstad v. Contra United States v. Jimenez*, 41 F. App'x 1, 46 (7th Cir. 2002), which is unpublished and uncitable.

7

## III.   PLAINTIFFS STATE A BANE ACT CLAIM

Plaintiffs allege that the City violated their rights under California Civil Code § 52.1, also known as the Tom Bane Civil Rights Act.  To state a claim under the Bane Act, Plaintiffs must allege: (1) interference or attempted interference with a constitutional or legal right; and (2) the interference or attempted interference was by threats, intimidation, or coercion.  Cal. Civ. Code § 52.1; *Rodriguez v. City of Los Angeles*, 891 F.3d 776, 799 (9th Cir. 2018).  The facts alleged in the amended complaint sufficiently state a claim for relief under the Bane Act for threats to interfere, and attempted interference, with Plaintiffs' Fourth and Fourteenth Amendment rights and their statutory federal and state disability rights.

In the original complaint, Plaintiffs allege that "when individuals who were there tried to move their property within the taped off area on Rose, they were told they would be arrested if they crossed the tape." Compl. ¶27.  In its first motion to dismiss, the City argued that Plaintiffs' Bane Act claim was unsupported by specific facts about who told "unidentified individuals" they would be arrested if they crossed the police tape and who the threats were directed at.  *See* Dkt. #12, Deft. Mot. Dismiss Compl. at 23.   Plaintiffs amended to include specific facts about the threats and intimidation tactics used by LAPD officers.  FAC ¶32.  Specifically, Plaintiff Cooley asserts that "an LAPD officer informed her that she would be arrested if she did not move back and away from the area, while another officer, observing the exchange between Ms. Cooley and the first officer threatened to pepper spray her if she didn't step back and do what she was told." *Id.*   Plaintiffs Hubert and Zaroda, as well as other putative class members, similarly faced the threat of arrest and were coerced into leave their property behind when LAPD officers erected  yellow "caution" tape and unlawfully seized their property.  FAC ¶¶29-33.

Now, the City argues that Plaintiffs added "self-serving" facts.  Including additional facts favorable to Plaintiffs to plead a plausible claim is the purpose of

amendment.  *See, e.g.*, *Ogola v. Chevron Corp.*, No. 14-cv-173-SC, 2014 U.S. Dist. LEXIS 117397 at *10 (N.D. Cal. Aug. 21, 2014) ("The new facts pleaded in the FAC support both direct and indirect theories of liability.")

Moreover, after previously arguing that Plaintiffs failed to set out sufficient facts to support a Bane Act claim, the City now contends that the additional facts in the First Amended Complaint about "threats, intimidation, or coercion" are somehow a new theory of liability not included in the Government Claim.  Mot. Dismiss 12.  Plaintiffs provided additional facts in response to the Court's prior ruling; however, Plaintiffs did not add a new theory of liability.

The Government Claims Act only requires "a general description of the injuries and the names of the public employees who caused them," if known. *Fall River v. Joint Unified School Dist.*, 206 Cal. App. 3d 431, 434 (1988).  Each cause of action must be raised in the government claim.  *Id.*

> The claim, however, need not specify each particular act or omission later proven to have caused the injury.  A complaint's fuller exposition of the factual basis beyond that given in the claim is not fatal, so long as the complaint is not based on an entirely different set of facts.  Only where there has been a complete shift in allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim, have courts generally found the complaint barred.

*Stockett v. Assoc. of Cal. Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 447 (2004) (internal citations and quotations omitted). Plaintiffs' amended allegations are based on events at the same time and place.

In *Stockett*, a government employee brought a wrongful termination action against a government employer.  His tort claim included the date and place of his termination and generally stated the circumstances surrounding his termination. *Id*. At trial, Stockett succeeded on two new theories of liability that were not raised in his original tort claim.  The California Supreme Court held that the trial court properly allowed Stockett to proceed on those claims because the new theories of

9

liability simply elaborated and added detail to his wrongful termination claim and were based on the same factual foundation.

As in *Stockett*, Plaintiffs allege liability under the Bane Act for the same wrongful acts raised in their government claim. They provided specific notice of the Bane Act claim and facts about the Fourth Amendment violation, including the interference with that right by preventing them from saving their property, threatening them with arrest and other force. *See* Dkt. #12-1, Ex. B, Deft. Request for Judicial Notice. Because the amended facts "merely … add[] further detail to the claim, but [are] predicated on the same fundamental actions … by the defendants," Plaintiffs' government claim is sufficient and the Bane Act claim should go forward. *Stockett*, 34 Cal. 4th at 447.

## IV.   CONCLUSION

For the foregoing reasons, the Motion to Dismiss should be denied. Should any portion of the motion be granted, Plaintiffs respectfully request leave to amend.


Dated: July 15, 2019                    Respectfully submitted,

                                         LAW OFFICE OF CAROL A. SOBEL


                                         By:   /s/ Carol A. Sobel
                                         Attorneys for Plaintiffs

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FAC